EDMOND S. DOTY *vs.* FIRST NATIONAL BANK OF LARIMORE.

Opinion filed Aug. 5th, 1892.

**National Banks—Transfer of Stock.**

Section 5139, Rev. St. U. S., providing that the stock of a national bank shall be "transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association," was enacted for the benefit of the corporation, its shareholders and creditors, only. As to all other parties a transfer of such stock, good at common law, is good under the statute.

**Priority of Transferee over Attachment Creditor.**

Under the federal statutes, the rights of a transferee of national bank stock, under an unrecorded transfer, good at common law, are superior to the rights of a subsequent attaching creditor of the transferrer without notice.

**State Cannot Regulate Transfer of National Bank Stock.**

It is not competent for state legislation to limit or interfere with the transferable quality of national bank stock, as the same is left by the statutes of the United States.

Appeal from District Court, Grand Forks County; *Templeton,* J.

Action by Edmund S. Doty against the First National Bank of Larimore, to recover damages for the refusal of defendant to transfer certain shares of stock on its books. Judgment for defendant. Plaintiff appeals.

Affirmed.

*Bosard & Van Wormer,* for appellants.

If plaintiff had a right to insist on the transfer, defendant is liable in damages for refusing to make the transfer. The damages are the value of the stock with interest. Boone on Corp. § 122, Note 13. *Bond* v. *Mt. Hope Iron Co.,* 99 Mass. 505; *Bank of America* v. *McNeil,* 10 Bush. (Ky.) 54; *Sargent* v. *Franklin Ins. Co.,* 8 Pick. 90; *Kortright* v. *Buffalo Bank,* 20 Wend. 91; S. C., 22 Wend. 348; *Dayton Nat. Bank* v. *Merchants Nat. Bank,* 37 Ohio St. 208; *Case* v. *Bank,* 100 U. S. 446; *Freon* v. *Carriage Co.,* 42 Ohio St. 30; *Kimball* v. *Union Water Co.,* 44 Cal. 173; *Baltimore City Passenger Ry. Co.* v. *Sewell,* 35 Md. 238; S. C., 6 Am. Rep. 402; *Baker* v. *Marshall,* 15 Minn. 177. Lawson's Rights Rem. & Pr., § 466. It is

insisted that the case falls within the provisions of § 2915, Comp. Laws. Under such a statute the rights of attaching creditors, without notice of a prior unrecorded transfer, are superior to such transfer. Cases cited in opinion of court *in re*. Argus Printing Co., 1 N. D. 434; S. C., 48 N. W. Rep. 347, 350; *Conway* v. *John*, 23 Pac. Rep. 170; *Buttrick* v. *Nausha R. R.*, 62 N. H. 413; S. C., 13 Am. State Rep. 578.

*Newman & Resser*, for respondents.

The defendant is a creature of the statutes of the United States, and claims immunity under those statues. The state can exercise no control over national banks, except in so far as congress may permit. *Farmers & Mechanics Nat. Bank* v. *Dearing*, 91 U. S. 29.

National banks are means and instrumentalities adopted by congress to promote and faciliate the fiscal operations of the government and as such are under the exclusive control of congress, *Bank* v. *Deering*, 91 U. S. 29; *Osborne* v. *Bank*, 9 Wheat, 708; *McCulloch* v. *Maryland*, 4 Wheat, 316. To the point that the transferee of stock not recorded, has a superior right to a subsequently attaching creditor, *Bank* v. *Lanier*, 11 Wal. 369; *Bank* v. *Eliot Nat. Bank*, 7 Fed. Rep. 369; *Scott* v. *Pequannock Nat. Bank*, 15 Fed. Rep. 494; *Dickinson* v. *Central Nat. Bank*, 129 Mass. 179; *Boston etc. Assn.* v. *Cory*, 129 Mass. 435; *Libby* v. *Bank*, 133 Mass. 515.

BARTHOLOMEW, J. This case was tried by the court, and the facts are undisputed. On and prior to November 6th, 1886, one C. C. Wolcott was the absolute owner of 220 shares of stock of the respondent bank, and held certificates for the same. On the 6th and 20th days of November, 1886, said Wolcott in writing assigned said certificates to A. J. Bowne, president of respondent bank, and delivered the same to him as collateral security for the amounts which Wolcott was owing the respondent bank and the Hastings National Bank, of Hastings, Mich. These amounts aggregated $23,000, and no portion of such indebtedness had been paid when the case was tried below. The value of the stock assigned was $22,000. The stock was not transferred on the

books of the respondent bank, but, so far as shown by said books, Wolcott continued to be the absolute owner thereof, until after the attachment hereafter mentioned was levied. On July 5th, 1888, an action was commenced by D. B. Doty & Co. against said Wolcott and others in the District Court of Grand Forks County. The action was aided by attachment, and on July 19th, 1888, the sheriff of said county duly levied upon said shares of stock by serving the proper notice upon the cashier of the respondent bank. At the time of such levy the stock stood upon the books of the bank in the name of said Wolcott, and neither the plaintiff in the attachment action nor the officer making the levy had any knowledge of the assignment to Bowne. The certificates of stock provided that the stock should be transferable only on the books of the bank upon the surrender of the certificates. Subsequently D. B. Doty & Co. recovered judgment in the attachment action, execution was issued, and the sheriff of said county, under such execution, sold the shares of stock upon which the attachment had been laid to Edmund S. Doty, the appellant herein, and executed the usual sheriff's certificate of sale therefor. Immediately thereafter appellant presented to the respondent bank a duplicate copy of such certificate, together with a written demand that such stock be transferred to him upon the books of the bank, and stock certificates issued to him therefor. This the bank refused to do or to permit to be done; whereupon this action was brought to recover from the bank the value of such shares of stock. But one question of law is urged for our determination, and it is this: Under the facts disclosed, could appellant, under and by virtue of said sheriff's sale, acquire any right or title to the shares of stock of a national bank superior to the title and rights of Bowne under the assignment and delivery? If so, then the respondent bank improperly refused to make the transfer, and is liable for the value. *Sargent* v. *Insurance Co.,* 8 Pick, 90; *Bond* v. *Iron Co.,* 99 Mass. 505; *Shipley* v. *Bank,* 10 Johns, 484; *Freon* v. *Carriage Co.,* 42 Ohio St. 30. If not, the refusal was justified, and no liability, attaches. Sections 5003, 5005, Comp. Laws, make property in this

state, incapable of manual delivery, liable to seizure upon attachment or execution, and specify the means by which it may be so seized. Section 5003 reads: "The rights or shares which such defendant may have in the stock of any association or corporation, together with the interest and profits thereon, and all other property in this territory of such defendant, shall be liable to be attached and levied upon, and sold to satisfy the judgment and execution." Section 5004 provides, in effect, that shares in a corporation may be attached by a sheriff by leaving with the president, secretary, cashier, or managing agent of such corporation a certified copy of the warrant of attachment, with a written notice specifying the property attached. Section 5005 provides: "Whenever the sheriff shall, with a warrant of attachment or execution against the defendant, apply to such officer, debtor, or individual, for the purpose of attaching or levying upon such property, such officer, debtor, or individual shall furnish him with a certificate, under his hand, designating the number of rights or shares of the defendant in the stock of such association or corporation, with any dividend or 'incumbrance thereon, or the amount and description of the property held by such association, corporation, or individual, for the benefit of or debt owing to the defendant." The sufficiency of the formal steps in this case is not questioned, nor is any claim made that shares of corporate stock, when actually owned by a defendant in attachment at the time of the levy, are not subject to the levy. Section 2915, Comp. Laws, provides: "* * * Whenever the capital stock of any corporation is divided into shares, and certificates therefor are issued, such shares of stock are personal property, and may be transferred by indorsement, by the signature of the proprietor, or his attorney or legal representative, and delivery of the certificate; but such transfer is not valid, except between the parties thereto until the same is so entered upon the books of the corporation as to show the names of the parties by and to whom transferred, the number or designation of the shares, and the date of the transfer." The last sentence in § 2937 reads:

"Such stock and transfer book must be kept open to the inspection of any stockholder, member, or creditor."

The learned counsel for the appellant contend that our statutes constitute a registry law in the fullest sense, and that under the law a creditor attaching corporate stock without notice is fully protected against any transfer or assignment which does not appear upon the books of the corporation. The decisions of the state courts, under statutes more or less similar to our own, are by no means uniform, and we do not feel called upon in this case to rule upon the question presented, but will assume that our law is a registry law.

But the stock here involved consists of shares in a national bank, organized and existing under and by virtue of the laws of congress. National banks are fiscal agencies of the government, and congress is the sole judge of the necessity for their creation, and, having been brought into existence by congress, the state can exercise no control over them, nor in any wise effect their operation, except in so far as congress may see proper to permit. *Bank* v. *Dearing*, 91 U. S. 29. Section 5136, Rev. St. U. S. gives to a national bank power to prescribe, by its board of directors, by-laws not inconsistant with law, regulating the manner in which its stock shall be transferred; and § 5139 provides that shares of stock shall be transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association. It appears from the findings that the certificates of stock stated that said stock should be transferable only on the books of the bank on surrender of said certificates, and, as such certificate issues under the corporate seal, we must assume, nothing to the contrary appearing in the record, that such statement was in pursuance of a duly adopted by-law. But, giving the statement the force of a by-law, still we think the federal authorities would sustain the assignment to Bowne as against appellant. In *Bank* v. *Lanier*, 11 Wall. 369, the owner of national bank stock pledged the same with power of attorney to sell and transfer the same on the books of the bank, but did not assign nor deliver the

certificates. Subsequently he sold the shares, and assigned and delivered the certificates to Lanier and Handy. The certificates contained the same statement as to the manner of transfer that is found in this case. Two years after their purchase Lanier and Handy applied to the bank to have the stock represented by the certificates which they held transferred to them. This the bank refused to do, on the ground that the stock had already been transferred by virtue of a sale under the former power of attorney. It was held that this refusal was unwarranted; that the party who held the certificates was entitled to the stock; and that the bank could only transfer the stock upon the surrender of such certificates. Upon the authority of *Bank* v. *Lanier*, it was held in *Continental Nat. Bank* v. *Eliot Nat. Bank*, 7 Fed. Rep. 369, that an unrecorded transfer of national bank stock will take precedence of subsequent attachment in behalf of a creditor without notice. This case was followed by *Scott* v. *Bank*, 15 Fed. Rep. 494, and *Hazard* v. *Bank*, 26 Fed. Rep. 94, in each of which the same ruling is made, and the Supreme Court of Massachusetts in *Sibly* v. *Bank*, 133 Mass. 515, construing the national bank act in the light of federal decisions and policy, reached the same conclusion.

We do not think these decisions are weakened in the least by an uncertain *dictum* contained in *Johnston* v. *Laflin*, 103 U. S. 800, where it is said that the transfer on the books of the bank required by the act of congress "is necessary to protect the seller against subsequent liability as a stock holder, and perhaps to protect the purchaser against proceedings of the seller's creditors. Purchasers and creditors, in the absence of other knowledge, are only bound to look to the books of registry of bank." The question of the rights of the seller's creditors was in no manner involved in *Johnston* v. *Laflin*. Following the decisions heretofore cited, we hold that the act of congress pertaining to the transfer of national bank stock, and the by-laws adopted in pursuance of said act, do not constitute a registry law; that such provisions were enacted for the benefit of the corporation, its stockholders

and creditors, and that as to all other persons a transfer of stock, good at common law, is good under the federal statutes; and that under said statutes the rights of a transferee under an unrecorded transfer, good at common law, are superior to the rights of a subsequent attaching creditor of the transferrer without notice. It remains, then, only necessary to ascertain what effect, if any, a state statute can have in limiting the mode of transfer of such stock.

It was settled by the case of *Black* v. *Zacharie*, 3 How. 483; that the validity of an assignment of corporate stock depended upon the law of the state where the corporation was located, and not upon the law of the state where the assignment was made. Authority is hardly necessary upon the proposition that the sovereignty which creates the corporation must have the exclusive right to direct the manner in which the stock of such corporation must be transferred, at least when the corporation is located and doing business exclusively within the jurisdiction of the creating sovereignty. The effect to be given state statutes, so far as they may interfere with or limit the transferability of national bank stock, is, of course, purely a federal question, and we ought to be governed in this matter by the decisions of the United States courts. In *Continental Nat. Bank* v. *Eliot Nat. Bank, supra,* a party residing at Boston, Mass., assigned and forwarded certificates of stock in Eliot National Bank, located at Boston, to the plaintiff bank, located at New York. Subsequently, and before any transfer was made upon the books of the Eliot National Bank, that bank attached the stock as the property of the transferrer. United States Circuit Judge Lowell, sitting in Massachusetts, said: "It has been very ably urged that, by the law of Massachusetts, the attachment would have the preference. This I consider doubtful; but the decision does not depend upon the law of Massachusetts. It is not important to consider whether the contract was consummated in Massachusetts or New York. The negotiability or transferable quality of the stock of a national bank depends upon the laws of the United States." Citing, *Dickinson* v. *Bank,*

129 Mass. 279.   *   *   *   "The time and mode of attaching property and its effect in general are part of the law of the forum; but its operation upon unrecorded transfers of shares in national banks is regulated by the law which creates the shares, and provides for their conveyance and registration."   Again, in *Scott* v. *Bank*, *supra*, the same question was before the United States Circuit Court sitting in New York. The stock involved was stock of a national bank located in Connecticut, and it was urged that, under the decisions of that state, the attachment would have preference, but the court said: "The defendant having been incorporated under the national banking act, the rules which regulate the transfers of its stock are to be found in the statutes of the United States." And, after quoting the statute, the court adds: "The construction of the statute, and the question of title as between the assignee and the attaching creditor, are not controlled by the tenor of the decisions of any one state." These decisions seem to be decisive of the point under discussion. In their absence we might, perhaps, have reached a different conclusion, under the broad language used in *National Bank* v. *Com.*, 9 Wall. 353. In speaking of the principle that government agencies cannot be subjected to state legislation, as announced in *McCulloch* v. *Maryland*, 4 Wheat. 316; and the cases following that decision, Justice Miller, speaking for the full bench, said: "The principle we are discussing has its limitation,—a limitation growing out of the necessity on which the principle is founded. That limitation is that the agencies of the federal government are only exempted from state legislation so far as that legislation may interfere with or impair their efficiency in performing their functions by which they are designed to serve that government.   *   *   *   It is only when the state law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional." But the cases cited from the Federal Circuit Courts were decided long after *Bank* v. *Com.*, and involve the precise point here raised, and we deem them conclusive upon us.

The judgment of the District Court is therefore affirmed.

WALLIN, J., concurs.

CORLISS, C. J., having been of counsel, did not sit in the case or take part in the decision.