## MAY ALICE BANNING *vs.* JOHN A. SABIN.

Argued June 30, 1892. Decided Oct. 5, 1892.

**A Certain Transaction Held to be in Legal Effect a Redemption.**

Upon an examination and consideration of the evidence in this case, it is held that the same did not justify one of the findings of fact of the court below. *Held*, further, that it conclusively appears from all the evidence that the transaction involving an assignment of a sheriff's certificate of execution sale from W. to A., referred to in *Banning* v. *Sabin*, 45 Minn. 431, was, in legal effect, a redemption from such sale.

**Title Held as Security.**

*Held*, further, that A. thereafter held the property in question as security for the payment of money, and with no other rights or remedies than those accorded by law to a mortgagee.

**Evidence Considered.**

It is also *held* that the evidence would have justified a finding that B. & K., to whom A. deeded the property, obtained no greater or different rights and interests than those possessed by A., and that both A., B., and K. were bound by a judgment entered in certain mortgage foreclosure proceedings instituted against the mortgagor and W. prior to the assignment of the sheriff's certificate to A.

Appeal by defendant, John A. Sabin, from a judgment of the District Court of Ramsey County, *Brill*, J., entered January 25, 1892.

This is an action of ejectment brought by the plaintiff, May Alice Banning, to recover from the defendant, John A. Sabin, the possession of certain real estate in Ramsey County, Minnesota. The case has been twice before this court. 41 Minn. 477; 45 Minn. 431. After the later decision defendant paid the costs and demanded a new trial under the statute.

October 19, 1853, Joseph E. Fullerton was the owner of the land in controversy, about twenty-seven acres lying a mile northeast of Lake Phalen. On that day he mortgaged the property to Joseph R. Hall. February 20, 1854, he conveyed the property to one Bullen, and on June 16, 1854, Bullen conveyed to D. A. J. Baker. April 9, 1855, a judgment was entered against Baker, in favor of the Bank of Hallowell. On June 16, 1857, the property was sold on an exe-

cution sale under that judgment to C. C. Washburn. November 21, 1857, Hall commenced a suit to foreclose his mortgage. Fullerton, Baker, Washburn, and many others, were made defendants. July 12, 1858, Baker executed a deed of the property to Albert Armstrong. At the time this deed was executed, Baker and Armstrong entered into an agreement, whereby Armstrong undertook to purchase the Sheriff's certificate of sale under the execution from Washburn, for the face thereof, and to hold it until after the time of redemption expired, and until a certain time, when he was to deed to Baker, or to any one he might name, on payment of the amount he had paid to Washburn for the certificate, and a bonus of $500. The deed executed by Baker was placed in escrow, and was to be delivered to Armstrong in case Baker failed at the appointed time to pay the amount agreed. Armstrong duly purchased and took an assignment of the certificate from Washburn, and, no one redeeming, the Sheriff, on July 20, 1858, executed to Armstrong the usual sheriff's deed of the premises. Baker failed to pay at the appointed time, and in April, 1859, the deed of July 12, 1858, was delivered to Armstrong. On June 30, 1859, the foreclosure suit was discontinued as to Washburn; (*Banning* v. *Sabin*, 41 Minn. 477,) and on July 9, 1859, judgment was entered therein in favor of the plaintiff and against all of the defendants except Washburn. July 28, 1859, Armstrong conveyed the property to William L. Banning and John J. Knox, the words of conveyance being "grant, bargain, sell, release and quitclaim." October 20, 1859, Hall purchased the premises at the foreclosure sale under the judgment of foreclosure above mentioned.

The title of William L. Banning has passed to the plaintiff, and the title of Hall, to the defendant.

The action was tried May 27, 1891, before *Brill*, J., without a jury. A decision was filed October 6, 1891, in favor of the plaintiff, the court finding that "it was not intended by either Baker or Armstrong that the payment by Armstrong to Washburn and the assignment of the Sheriff's certificate to Armstrong should be a redemption from said Sheriff's sale to Washburn. On the contrary, it was intended and understood by Armstrong and Baker, that the

same should not be a redemption, but that Armstrong should acquire and hold all right and title acquired by Washburn under said sheriff's sale and certificate." Judgment in favor of plaintiff was entered pursuant to the decision, and defendant appeals.

*Williams, Goodenow & Stanton, Cyrus J. Thompson,* and *Hiram F. Stevens,* for appellant.

The transaction between Baker, Armstrong and Washburn, amounted in law to a redemption of the property. *Robinson* v. *Lincoln Savings Bank,* 85 Tenn. 363; *Baker* v. *Fireman's Fund Ins. Co.,* 79 Cal. 34; *Holton* v. *Meighen,* 15 Minn. 69, (Gil. 50;) *Bayley* v. *Bayley,* 5 Gray, 505.

As between Baker and Armstrong, the transaction was a security for the money advanced by Armstrong to save the property of Baker, and was, in contemplation of law, a mortgage. Jones, Mortg. 266–275; *Carr* v. *Carr,* 52 N. Y. 251; *Niggler* v. *Maurin,* 34 Minn. 118; *Fisk* v. *Stewart,* 24 Minn. 97; *King* v. *Remington,* 36 Minn. 15; *Marshall* v. *Thompson,* 39 Minn. 137; *Skinner* v. *Miller,* 5 Litt. 84; *Morris* v. *Nixon's Exrs.,* 1 How. 118; *Russell* v. *Southard,* 12 How. 139; *Hoile* v. *Bailey,* 58 Wis. 434; *Reed* v. *Reed,* 75 Me. 264; *McNeill* v. *Norsworthy,* 39 Ala. 156; *Desloge* v. *Ranger,* 7 Mo. 329; *Wilson* v. *Giddings,* 28 Ohio St. 554; *Trucks* v. *Lindsey,* 18 Iowa, 504; *Flagg* v. *Mann,* 2 Sumner, C. C. 486. The absence of a personal liability on the part of the grantor to repay the money is not a test in deciding whether the conveyance is absolute, or intended as security. *Conway's Exrs.* v. *Alexander,* 7 Cranch, 218; *Matthews* v. *Sheehan,* 69 N. Y. 585; *Montgomery* v. *Spect,* 55 Cal. 354; *Campbell* v. *Dearborn,* 109 Mass. 130.

Banning should be held to have purchased from Armstrong with notice, and to have acquired merely Armstrong's title. *Geib* v. *Reynolds,* 35 Minn. 331; *Stees* v. *Kranz,* 32 Minn. 313; *Daughaday* v. *Paine,* 6 Minn. 443, (Gil. 304.)

*H. J. Horn,* and *C. N. Bell,* for respondent.

The transaction between Armstrong and Washburn did not amount in law to a redemption of the property. Armstrong had no right to

redeem, and was a purchaser merely.    There was no merger of the title of Armstrong so obtained, in the quitclaim deed executed by Baker to Armstrong.    *Davis* v. *Pierce*, 10 Minn. 376, (Gil. 302;) *McArthur* v. *Martin*, 23 Minn. 74.

The claim that the title held by Armstrong was in effect a mortgage, wherein Baker was mortgagor, and Armstrong mortgagee, is groundless.    There was no debt owing by Baker, and no personal liability, and therefore the presumption is that the transaction was not a mortgage.    *Carr* v. *Carr*, 52 N. Y. 251; *Henley* v. *Hotaling*, 41 Cal. 22; *Glover* v. *Payn*, 19 Wend. 518; 1 Jones, Mortg. § 265. The transaction was a conditional sale.    In order to convert it into a mortgage, the evidence should be so clear as to leave no reasonable doubt that the real intention of the parties was to execute a mortgage.    1 Jones, Mort. § 260; *Sloan* v. *Becker*, 34 Minn. 491.

Banning, a purchaser from Armstrong, is apparently a *bona fide* purchaser for value.    There is no question but that he gave a valuable consideration, and the burden of proof to show lack of good faith is upon the party attacking his deed.    2 White & Tudor's Lead. Cas. in Equity, pt. 1, p. 99; *Roll* v. *Rea*, 50 N. J. Law, 264.    There was no defeasance on the record as required by Statute, 1878 G. S. ch. 40, § 23, and Banning was not bound by any constructive notice on the record which fell short of the requirements of the Statute.    *Cogan* v. *Cook*, 22 Minn. 137; *Roberts* v. *Grace*, 16 Minn. 126, (Gil. 115;) *Bailey* v. *Galpin*, 40 Minn. 319.

COLLINS, J.    On the first appeal in this case a judgment in defendant's favor was reversed, and a new trial granted, for the reason that the conclusion of law of the court below that Washburn and his grantees, including this plaintiff, were bound by the judgment in the mortgage foreclosure proceedings was not justified by the facts then before the court.    41 Minn. 477, (43 N. W. Rep. 329.)    The gist of that decision was that, from the whole record, the action having been effectually dismissed and discontinued as to Washburn, it clearly appeared that the judgment rendered was not against him. Upon the second appeal, which was from a judgment in plaintiff's favor, it not appearing whether the transaction involving the assign-

ment by Washburn to Armstrong of the sheriff's certificate on execution sale was before or after the time for redemption had expired, nor whether the latter and Baker, the judgment debtor, intended such a result, it was held that it did not necessarily follow, as a legal conclusion, that the transaction should be construed as, in legal effect, a redemption from the execution sale. The result was an affirmance of the judgment. 45 Minn. 431, (48 N. W. Rep. 8.) Thereupon defendant availed himself of his statutory right to a second trial, and the present appeal is from a judgment against him based upon findings of fact and the conclusions of law made and filed by the court on such second trial. Among these findings of fact was one to the effect that it was not intended by either Armstrong or Baker that the payment by the former to Washburn, or the assignment of the sheriff's certificate by the latter, should be a redemption from the execution sale. But on the contrary, it was intended and understood by Armstrong and Baker that the transaction should not be a redemption from the sale upon execution, and that Armstrong should acquire and hold all right and title acquired and held by Washburn by virtue of the sheriff's certificate of sale. It is this finding which is assailed by appellant, (defendant,) as not justified by the facts as they appeared in evidence, and, if this assertion be true, we have a condition of affairs not heretofore considered, but which were very suggestively alluded to by Mr. Justice Dickinson when writing in the case on the second appeal. It is therefore incumbent upon us to consider the testimony in relation to the real character of the transactions wherein Armstrong obtained a quitclaim deed from Baker and an assignment from Washburn of the sheriff's certificate of sale upon execution, which testimony appeared for the first time on the last trial of this case. At the risk of repeating dates and circumstances which might be learned by reading either of the decisions heretofore filed, we will refer to the instruments and conveyances necessarily involved in the transactions. The mortgage was made and recorded in the year 1853. The judgment was entered and docketed April 9, 1855. The execution sale on this judgment was on July 16, 1857, Washburn becoming the purchaser of the premises in question. The mortgagee, Hall, com-

menced his action to foreclose on November 21st of the same year, making Baker, Washburn, and others parties defendant. Washburn appeared by his attorneys in this action February 2, 1858. On July 12th following,—a few days before the expiration of the period of redemption from the execution sale,—Baker and his wife executed a quitclaim deed of the premises to Armstrong, who on the same day paid to Washburn the amount due to him, and procured an assignment of the sheriff's certificate. July 20th, the year of redemption having expired, the sheriff, in accordance with the existing statute, executed and delivered his deed to Armstrong, in which the sale, the execution of the certificate, and its assignment were recited, but the date of such assignment was not stated. The stipulation to dismiss the action as to Washburn was filed July 9, 1859, and on the same day a decree therein was entered. A sale to Hall, the mortgagee, took place on October 20, 1859, and, there being no redemption, the same was duly confirmed three years later. Defendant's claim of title rests on this foreclosure sale. July 28, 1859, Armstrong granted, bargained, sold, and quitclaimed to Wm. L. Banning and J. J. Knox, and in his deed referred to the premises as being the same quitclaimed by Baker and his wife on July 12, 1858, and conveyed by the sheriff July 20th of the same year to himself. Reference was also made to the record of both of these conveyances in the office of the register of deeds. The plaintiff's claim of title is based upon a deed of bargain and sale executed by William L. Banning and wife and R. B. Galusha as trustee in July, 1888. The property was then, and for about ten years had been, in the actual possession of the defendant. The judgment on which the sale to Washburn was made was the earlier of several against Baker which had become liens on the land. Financial troubles had made it almost impossible to borrow money upon real-estate security, and equally as difficult to sell, and Baker was about to lose valuable property for a trifle of its value. With these statements of the facts and circumstances we are brought to consider the testimony most favorable to plaintiff, and on which the finding in question must have been based, that of John M. Gilman, Esq. He was the attorney who represented Mr. Baker in the transaction which resulted in the

acquirement of the legal title to this property by Mr. Armstrong. As Baker's attorney, he devised the plan whereby it was hoped that something might be saved for his client "out of the wreck." He knew that Armstrong had money for investment, and that, if he could be persuaded to procure an assignment of the certificate held by Washburn, and the time in which other creditors could redeem expired without redemption, their liens would be divested, and the title to the property become vested in Armstrong, the only lien remaining being that of the mortgage then in process of foreclosure. His plan, according to his testimony, was "to let the title mature under the * * * sale, and mature in the hands of somebody who will agree to sell it to you [Baker] at something that is to be agreed upon after they get the title, * * * and then convey it to your wife or any person to whom you may want it conveyed." It was this plan which was laid before Armstrong, and, after some negotiations, it was agreed that Baker should execute a quitclaim deed of the property to Armstrong, "probably to make the title more solid in case it matured in" the latter under the certificate which he was to have assigned to himself. It was also agreed "that, if the title matured in him [Armstrong] under the execution sale, he would then sell the property back to Baker, or convey it just as Baker might want it conveyed, upon being paid the amount which he had to pay to Washburn, and a certain other bonus, the exact amount of that I cannot recollect * * * and this was to be paid within a fixed time." If Baker could raise the money within the fixed period of time, "then Armstrong was to convey the property just as Baker might decide." The witness further testified: "Now it was particular not to have this operate as a redemption, because they knew there would be nothing accomplished. There being those other judgments, they could come right down on that property. The title was to be secured under" the judgment. The quitclaim deed was to be actually delivered over to Armstrong in case Baker failed to pay within the time agreed upon, and it was delivered on or before April 1, 1859, at which time it was recorded. The salient features of this transaction, by which its real nature must be determined, were that, at Baker's solicitation and for his benefit, Arm-

strong paid off the amount of Washburn's claim on the land, before the time for redemption expired, and by agreement took an assignment; the express design being that such payment should not "operate as a redemption" from the sale, because, by redeeming, the plan to save the property for the judgment debtor would have been interfered with and probably defeated. Armstrong paid nothing for the quitclaim deed, and, according to Mr. Gilman's opinion, the sum he paid for an assignment of the certificate was merely nominal, in comparison with the real value of the property, while Mr. Baker testified that the amount so paid was less than one fortieth of its actual worth. A time was agreed upon within which Baker had the absolute right to a conveyance of Armstrong's interest in the property by payment of the money advanced, and a bonus for its use in what Baker and his attorney evidently regarded as a great emergency. To summarize, the owner of an equity of redemption in real property quitclaimed it to another for the purpose of procuring him to advance money to prevent a sale upon execution from becoming absolute. To secure a return of the money, and to cut off certain judgment creditors who had liens on the land, it was agreed that an assignment of the sheriff's certificate of sale should be taken, and that the transaction should not operate as a redemption from the sale. The amount necessary to pay upon the property was merely nominal in comparison with its value. It was understood and agreed that, if other creditors failed to redeem, and the title to the property matured in the holder of the sheriff's certificate, it should be held for the benefit of the owner, to be conveyed as he might direct, upon repayment of the money advanced, and an agreed bonus within a fixed period of time. The person advancing the money paid nothing to the owner for a transfer of his interest by deed of quitclaim. Its execution before he would act was a condition imposed upon the owner, the avowed object being to strengthen the title should the latter fail to pay the sum invested within the time agreed upon. The owner requested that his debt be paid to the purchaser at the sale, and that the party so paying take a transfer of the purchaser's interest in the property sold. It cannot be distinguished from the transfer of a debt by assignment from one creditor to another, at the

request of the debtor, who is thereby enabled to secure an extension of time within which to pay. The transaction, as devised and carried out, resolved itself into a plan to relieve Baker's property from an incumbrance, the result of the execution sale, without having it appear to be a redemption, and also into the taking of security for the payment of money without taking a mortgage. The real nature of the transaction was covered up and concealed because of the intervening judgments against the debtor. But, with all of the facts disclosed, it would seem clear that Baker and his creditors could have insisted upon and enforced a right to redeem by complying with the undisputed terms of the agreement under which Armstrong obtained the quitclaim deed, and an assignment of the sale certificate. If this be true, the property was transferred to and was held by the latter as security for a debt, and it has been well said in *Carr* v. *Carr*, 52 N. Y. 251, that whenever property is transferred, no matter in what form or by what conveyance, as security for a debt, the transferee takes merely as a mortgagee, and has no other rights or remedies than the law accords to mortgagees. To our minds, the testimony established beyond a doubt that, although the parties endeavored to cover up and conceal the facts, it was their intention to have the payment to Washburn a practical redemption of the property from the execution sale. The skillful attorney to whom the business was intrusted stated the situation when he testified that they were particular not to have the steps taken "operate as a redemption" for the reasons given. The court erred in the finding under consideration. It was not warranted by the testimony.

Coming to this conclusion, there arises an important question, on which there was no finding, as to how far the testimony might tend to connect William L. Banning with the Hall judgment entered against Baker and all other persons claiming by, through, or under him a few days prior to the execution of the deed under which Banning and Knox claimed title. Had Armstrong purchased from Baker outright when he obtained the quitclaim deed and assignment, he would have been bound by the judgment as a voluntary purchaser *pendente lite*,—*Steele* v. *Taylor*, 1 Minn. 274, (Gil. 210;) *Sedgwick* v. *Cleveland*, 7 Paige, 287; Story, Eq. Pl. 340,—and that he was a mort-

gagee instead of a purchaser can make no difference.   As such mort-
gagee, pending the proceedings to foreclose, he was bound by the
judgment entered against his mortgagor, Baker, and it is apparent,
therefore, that, as against Armstrong, the Hall mortgage was prop-
erly foreclosed.   So the question resolves itself into an inquiry as to
what effect the judgment had upon William L. Banning, and to what
extent the testimony indicates that he was bound by it; to what ex-
tent was he affected or concluded by the facts which were there mani-
fest, of record and otherwise, and which would have appeared had he
made such inquiry as he was required to make?   Because of the
finding which we have held to be erroneous, there was no occasion
to, and the court below did not, pass upon this question.

When the plaintiff herein obtained a deed to the premises, the
defendant had been in actual possession for many years.   She ob-
tained no other or greater rights than were held by her grantor,
William L. Banning.   If his claims were subject to those of the
purchaser at the foreclosure sale, hers were and are.   As a new
trial must be had, let us examine the testimony pertinent to this
branch of the case.   When Banning and Knox procured the convey-
ance from Armstrong, the records in the register's office disclosed
the existence of the Hall mortgage, the notes secured thereby being
long past due, and a first lien upon the premises; also that the
property had been sold upon execution, July 16, 1857, to satisfy a
judgment against Baker, and the sheriff's certificate of sale had been
duly made and delivered; and, further, that a few days after the
year of redemption expired the sheriff had deeded to Armstrong,
as the assignee of the purchaser at the sale, the date of the assign-
ment not being given.   It also appeared from the records that be-
fore the year of redemption terminated, July 12, 1858, Baker had
quitclaimed to Armstrong, the consideration named being merely
nominal in comparison with the real value of the property.   From
the files and records in the office of the clerk of the district court,
it fully appeared that Hall had commenced an action to foreclose
his mortgage, (while Washburn was, of record, the holder of the cer-
tificate of sale on execution and Baker the owner in fee,) making
both of those persons defendants, among others; and that later,

when about to enter judgment, long after Washburn's interest had been transferred by assignment of the certificate to Armstrong, the person to whom Baker had conveyed the property *pendente lite*, the action had been dismissed and discontinued as to Washburn. Judgment was not entered against him, nor was Armstrong brought in as a party defendant. This, of itself, was a suggestive circumstance; the suggestion being that the parties acted designedly, and for a sufficient reason, when dismissing and discontinuing as to a single defendant. In showing the relations which really existed between Baker and Armstrong, in connection with the record as it stood when judgment was entered, the reason for such a course has been revealed. Was not there enough appearing in the well-known facts and circumstances which surrounded the affair when Banning and Knox obtained their deed from Armstrong to have put them upon inquiry as to other matters? And whatever puts one on inquiry is in equity notice to him of all the facts which such inquiry would have disclosed. It can hardly be claimed in behalf of Banning that he would not have been informed of the real nature of the transaction in which his grantor acquired the legal title to the property in question, had he made the slightest inquiry. Whether he did inquire, or whether he had full information, or none, is a matter of conjecture, as he was not called upon to testify on the trial. From the testimony which was submitted on the trial, the court would have been justified in finding that William L. Banning was in no better position than his grantor, Armstrong, and that neither he nor his grantee, the plaintiff, can now be allowed to affirm that the transaction between Baker and Armstrong was not in fact a redemption from the sale, and a pledging of the property as security for a debt, of which Banning had sufficient notice to put him on inquiry. In addition to what has been referred to, other significant facts affirmatively appear. The deed from Armstrong to Banning contained no covenants; was, in form, one of bargain, sale, and quitclaim. In it the premises were described as being the same conveyed by Baker to Armstrong by quitclaim deed of date July 12, 1858, and also as the premises deeded by the sheriff to Armstrong on July 20th of the same year, no allusion being made to the as-

signment of the sheriff's certificate. Further than this, the consideration named in the conveyance was, in amount, simply the sum which Armstrong had agreed to accept from Baker, with the then legal interest added,—a sum conceded to be but a small fraction of the actual value of the property. The legal aspect of the case may not have been understood, but, as said by appellant's counsel, these various facts tend to indicate that Banning, with more or less knowledge of the real situation, paid to Armstrong the amount of his claim, and took a deed with an intention to acquire his rights in the property, and to do nothing more than to substitute himself in Armstrong's place as to all adverse interests. His tacit acquiescence in the foreclosure proceedings, his omission to pay taxes, and his failure to remonstrate as to the claim of Hall and his successors in interest to the absolute ownership of the lands for some thirty years, confirm this view, if no greater effect be given to such facts.

Counsel for respondent urge that it was shown upon the trial that the Baker deed was, by agreement, left in the hands of Mr. Gilman, and was not actually delivered to Armstrong until about the time it was recorded. There is no claim that Banning had any knowledge of this. That he had, would be dangerous ground for plaintiff to occupy. But, as before stated, the deed bore date and was acknowledged July 12, 1858, within the redemption year. It was the presumption—and this had been made of record when the action was dismissed as to Washburn — that the deed was delivered not later than the day of its acknowledgment. *Windom* v. *Schuppel,* 39 Minn. 35, (38 N. W. Rep. 757.) On the face of the record, Armstrong acquired the fee before the year of redemption expired, and as a voluntary purchaser. On the face of the record, then, if we are to give the Baker deed any prominence, he took title to the premises through that deed pending the Hall suit, and not through a transfer from Washburn. As before stated, there is no finding on what we now regard as the important question in the case, and a new trial must be had.

Judgment reversed.

(Opinion published 53 N. W. Rep. 1.)