John **PEDERSEN**, Appellant,

v.

Alpha **BRANTNER** et al., Respondents.

No. KCD2623I.

Missouri Court of Appeals,
Kansas City District.

Dec. 3, 1973.

L. E. Atherton, Milan, for appellant.

Jayne, Oswald & Cottey, Kirksville, for respondents.

Before SHANGLER, P. J., and SWOFFORD and WASSERSTROM, JJ.

SHANGLER, Presiding Judge.

Plaintiff appeals from an adverse judgment upon a petition which seeks: a decla-

ration that plaintiff John Pedersen has legal title to certain shares of capital stock of the First National Bank of Milan, Missouri, a judgment enjoining defendants Alpha Brantner and Alta Pfeiffer from asserting claim of title thereto, and an order that defendant First National Bank of Milan transfer the shares of stock to plaintiff on its books.

The twenty shares of stock in contention were purchased by Rushie Linhart in the year 1936 and her ownership was evidenced by certificate number 291. On December 5, 1955, Mrs. Linhart borrowed money from defendant Bank and executed a note as evidence of the debt. Apparently, the loan was to be secured by certain livestock owned by Mrs. Linhart, but on the day after the note was signed she pledged, instead, her shares of stock to defendant Bank which then placed the certificate in its vaults.

Rushie Linhart had three daughters, Villa Pederson [now Slaughter], former wife of plaintiff, and Alpha Brantner and Alta Pfeiffer, joined as defendants.

On December 12, 1956, Rushie Linhart executed a bill of sale to plaintiff-appellant Pederson, then her son-in-law, to 70 head of Hereford cattle and a certificate representing 20 shares of the capital stock of defendant Bank. The instrument of sale also recited and acknowledged receipt by Mrs. Linhart of one dollar and other good and valuable consideration. The execution and delivery of the bill of sale by her mother to Pederson were established by Villa Pederson Slaughter. The others present at the transaction—plaintiff Pederson, Rushie Linhart, and a lawyer—did not testify. Mrs. Slaughter testified further that on December 15, 1956, she and Pederson took the bill of sale to the defendant Bank where they displayed it to John Rogers, executive officer, and asked that the stock certificate be transferred to appellant Pederson. Rogers explained that the bank held the certificate as security for a loan to Mrs. Linhart and that it could not be transferred until the note was paid.

Thereupon, they left the bank office and went to the courthouse where they recorded the instrument of sale.

Then, on December 29, 1956, Rushie Linhart, accompanied by her two other daughters, Alpha Brantner and Alta Pfeiffer, defendants here, went to the bank at which time Mrs. Linhart informed Mr. Rogers she wished to transfer the stock certificate to them. Mrs. Linhart endorsed the certificate to her two daughters by completing the transfer form on the back of the document. Since Mr. Rogers insisted on retaining the certificate as security for the mother's loan, the two defendant daughters executed a separate written pledge instrument, once again securing the loan by the stock certificate. Rushie Linhart's debt on the note has since been discharged, but the transfer of the stock to defendants Alpha Brantner and Alta Pfeiffer has not been recorded on the books of the bank.

Thus the matter stood until August 17, 1959, when plaintiff Pederson brought his petition for declaratory judgment. In that petition, plaintiff claims legal title to the shares of stock by virtue of the bill of sale, but admits that there was no physical delivery of the certificate to him. Plaintiff also seeks the court's judgment directing defendant Bank to transfer to him the shares of stock, and the certificate evidencing them, on the books of the bank. The defendant Bank pleaded the obligation undertaken by Rushie Linhart and the original pledge of the certificate, the subsequent repledge by defendants Brantner and Pfeiffer, the liquidation of the obligation on the note and the readiness of the bank to deliver up the certificate to the owner as declared by the judgment of the court. The answer of defendants Brantner and Pfeiffer alleged that the bill of sale was not effective to transfer title to the shares to plaintiff since there had been no delivery of the certificate to him as required by law. Defendants pleaded their ownership to the shares by the written endorsement of Rushie Linhart and her delivery to them of the certificates. These is-

sues were finally tried to the court on November 22, 1971, and the court adjudged defendants Brantner and Pfeiffer to be the owners of the stock. No formal findings of fact or conclusions of law were requested or made.

■ Appellant raises and randomly argues four points in his brief, but only one falls within the issues raised by the pleadings and tried by the parties. Points two and three, generously construed, assert a wrongful refusal by the bank to transfer the certificate to appellant when presented with the bill of sale, but appellant neither pleaded nor asked for relief on any such theory. Point four asserts that defendants Brantner and Pfeiffer had knowledge of the bill of sale at the time of the transfer of the stock to them and therefore were parties to a fraud upon appellant. Even if we consider that such an assertion was presented to the trial court, in the absence of a finding on that issue in this court-tried case, we deem it to have been resolved in favor of defendants in accordance with the judgment entered. Van Berg v. Koch, 413 S.W.2d 588, 591[4] (Mo.App.1967). Nor can defendants be held to constructive notice of the transaction between plaintiff and Rushie Linhart. Although a stock certificate as a muniment of title is itself tangible personal property [Addis v. Swofford, 180 S.W. 548, 553[1] (Mo.1915)], it transfers an incorporeal interest in property in the nature of a chose in action [Vanstone v. Goodwin, 42 Mo. App. 39, 47 (1890)] and the recording of an instrument for the sale of stock does not constitute constructive notice of the rights or interests created thereby. Schawacker v. Ludington, 77 Mo.App. 415, 421 (1898); Miller v. Heisler, 187 S.W.2d 485, 488[4, 5] (Mo.App.1945); § 59.330, RSMo 1969, V.A.M.S.

■ Appellant stakes his right to ownership of the stock on the theory that delivery to him of the bill of sale was symbolic delivery of title to the stock. The Uniform Stock Transfer Act, § 403.010 et seq., RSMo 1959,[1] however, provides [§ 403.050 and § 403.140]:

1. Title to a certificate and to shares represented thereby can be transferred *only*

(1) By *delivery* of the certificate *endorsed* either in blank or to a specified person appearing by the certificate to be the owner of the shares represented thereby; or

(2) By *delivery* of the certificate *and* a separate document containing a written assignment of the certificate

· · ··

(3) . . . (emphasis supplied)

· · · · · ·

An attempted transfer of title to a certificate or to the shares represented thereby without delivery of the certificate shall have the effect of a promise to transfer and the obligation, if any, imposed by such a promise shall be determined by the law governing the formation and performance of contracts.

Thus, the statute clearly provides that title to shares of stock follows the certificate and an attempted sale of stock without actual delivery of the certificate has the effect of a promise to transfer, which gives rise to an obligation on the transferor determinable by the law of contracts. In re Estate of Wintermann, 492 S.W.2d 763, 768[8] (Mo.1973); Brennan v. Wills, Ltd., 263 F.2d 1, 2[3] (10th Cir. 1959); In re Kies' Estate, 320 S.W.2d 478, 482[2] (Mo.1959).

Appellant effectively concedes that the conveyance by bill of sale does not conform to the requirements of the Uniform Stock Transfer Act, but contends that the transfer of national bank stock is not gov-

---

1. §§ 403.010 to 403.240 were repealed effective July 1, 1965. The transaction we consider occurred before the effective date of Article 8 of the Uniform Commercial Code, which now covers the subject, therefore this action is to be determined upon the basis of the repealed law. §§ 400.10–400.101, RSMo 1969, V.A.M.S.

erned by the endorsement and delivery requirements of former Chapter 403, but rather by the laws of the United States. Appellant relies on the terms of 12 U.S.C.A. § 52 which declares that the capital stock of every national bank shall be divided into shares of one hundred dollars each, shall be deemed personal property, and be transferable on the books of the bank in such manner as may be prescribed by its by-laws or articles, and that every person becoming a stockholder by such transfer shall, in proportion to his shares, succeed to all the rights and liabilities of the prior holder. Appellant argues that under this statute, "national bank stock is personal property transferable at the will of the owner" [citing Third National Bank v. Buffalo German Ins. Co., 193 U.S. 581, 24 S.Ct. 524, 48 L.Ed. 801 (1904)] and that since "a transfer . . . good at common law is good under the statute" [9 C.J. S. Banks and Banking § 581, p. 1103], and at common law a bill of sale is symbolic delivery of personal property [Poplin v. Brown, 200 Mo.App. 255, 205 S.W. 411 (1918)], delivery of the bill of sale was symbolic delivery of the certificate and effective to pass title to the shares at common law, the requirements of the Uniform Stock Transfer Act notwithstanding. These aphorisms, although valid in themselves, are given out of context and do not support appellant's conclusion that as to national bank stock the federal statute supervenes the transfer provisions of the Uniform Stock Transfer Act. Nor is appellant's argument aided by the miscellany of cases cited which approve *inter vivos* gifts of corporate stock by symbolic delivery. [Home for Destitute Crippled Children v. Boomer, 308 Ill.App. 170, 31 N.E. 2d 812 (1941); In re Valentine's Estate, 122 Misc. 486, 204 N.Y.S. 284 (1924) and Hillary Holding Corporation v. Brooklyn Jockey Club, Sup., 88 N.Y.S.2d 198 (1949).] These cases do not involve transfer of national bank stock, so they are irrelevant to the contention that state law and decision cannot in any manner govern such transfers. Furthermore, to the extent that these cases relate to transfer by gift, they are consistent with the holdings of our courts that the Uniform Stock Transfer Act "was intended to apply primarily to commercial transactions and does not restrict the courts in applying the law relating to gifts". In re Estate of Wintermann, *supra*, 492 S.W.2d 1. c. 767[5–8].

Although the rules which regulate the transfer of stock of national banks are governed by federal statute, 12 U.S.C.A. § 52 prescribes no exclusive method, but authorizes every national bank to regulate the manner in which its stock shall be transferred. Scott v. Pequonnock Nat. Bank, 15 F. 494 (C.C.N.Y.1883). That such regulatory authority is of limited scope, however, was clearly expressed by the United States Supreme Court in Johnson v. Laflin (1880), 103 U.S. 800, 1. c. 803, 26 L.Ed. 532:

Shares in the capital stock of associations under the national banking law, are salable and transferable at the will of the owner. They are, in that respect, like other personal property. The statute recognizes this transferability, although it authorizes every association to prescribe the manner of their transfer. *Its power in that respect, however, can only go to the extent of prescribing conditions essential to the protection of the association against fraudulent transfers or such as may be designed to evade the just responsibility of the stockholder* . . . As between Laflin and the broker, the transaction was consummated when the certificate was delivered to the latter, with the blank power of attorney indorsed, and the money was received from him. As to them, the title to the shares then passed. (Emphasis supplied.)

. . . . . .

The transferability of shares in national banks is not governed by different rules from those which are ordinarily applied to the transfers of shares in other corporate bodies.

This rule laid down for transfer of title to national bank stock is consonant with the endorsement and delivery requirements of the Uniform Stock Transfer Act. The holdings of Johnston v. Laflin, *supra,* have been consistently followed in subsequent adjudications involving the transfer of national bank stock under 12 U.S.C.A. § 52. Early v. Richardson, 280 U.S. 496, 50 S.Ct. 176, 74 L.Ed. 575 (1930); Scott v. Pequonnock Nat. Bank, *supra;* Doty v. First National Bank, 3 N.D. 9, 53 N.W. 77 (1892); Wright v. Keene, 82 Mont. 603, 268 P. 545 (1928); Figuers v. Sherrell, 181 Tenn. 87, 178 S.W.2d 629 (1944). From these authorities it clearly appears to have been the intent of Congress that in prescribing the manner of transfer of its capital stock by a national bank, [9 C.J.S. Banks and Banking § 581] the "regulations or conditions [so imposed] are operative only for the benefit of the corporation, its stockholders, and its creditors, and as to all other parties a transfer of such stock which is good as the common law is good under the statute. As between the parties the title to stock is transferred by the seller's delivery of his certificate thereof to the purchaser, indorsed or assigned in the usual manner, without more."

■ The appellant misconstrues these authorities to mean that 12 U.S.C.A. § 52 expresses a federal common law as to the transfer of the capital stock of a national Bank which cannot be supervened by state statute, that such federal common law coincides with the general common law, and that appellant's transfer by bill of sale was effective to pass title to the shares of national bank stock under the general common law, thus the Uniform Stock Transfer Act could require no more. While it may be conceded that 12 U.S.C.A. § 52 establishes a policy for the negotiability and transferable quality of the stock of a national bank which cannot be controlled by state law [Doty v. First National Bank, *supra,* 53 N.W., 1. c. 78], this federal policy is operative only "to the extent of prescribing conditions essential to the protection of the association against fraudulent transfers, or such as may be designed to evade the just responsibility of the stockholder" [Johnston v. Laflin, *supra,* 103 U.S., 1. c. 803]. As to this overriding federal interest, a federal common law may be said to preempt and control. Illinois v. Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972); Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694 (1940); United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966). As between the parties to a transfer of national bank stock, however, no federal principle governs, and a transfer which is good under the general common law is good under 12 U.S.C.A. § 52. [9 C.J.S. Banks and Banking § 581]. In Missouri, "in the absence of any express rule of law . . . courts have felt bound to adopt the common-law rule in determining what constitutes an absolute transfer of shares, and have held, in accordance with the general rules for the transfer of similar incorporeal interests, that a delivery of the only muniment of title held by the owner, with execution and delivery of an assignment of his interest by endorsement on the certificate or otherwise [will] be held a valid transfer". Merchants National Bank v. Richards, 6 Mo.App. 454, 462 (1879); Moore v. Bank, 52 Mo. 377, 379 (1879). The Uniform Stock Transfer Act adopted the substance of the general common law rule and, at the time of the transaction between appellant and Rushie Linhart, governed the question of title as between a transferror and transferee of national bank stock in Missouri. The attempted transfer of stock from Rushie Linhart to appellant by bill of sale was ineffective to pass title to appellant for failure to comply with the delivery requirement of the Act.

This is not to say that appellant was without remedy; he could have asserted a recovery on Mrs. Linhart's promise to transfer under § 403.140.

The judgment is affirmed.