Karla Rai **KUBATZKY** and Linda Lee Kubatzky, Plaintiffs-Appellants,

v.

**RAMADA INNS, INC.,** Harry G. Neill, Jr., and Patrick K. Warner, Defendants-Respondents.

No. 43785.

Missouri Court of Appeals, Eastern District, Division Two.

March 30, 1982.

Juan D. Keller, St. Louis, for plaintiffs-appellants.

Richard Wolff, Clayton, Andrew G. Neill, St. Louis, for defendants-respondents.

GUNN, Presiding Judge.

Plaintiffs-appellants were minors holding shares of stock of a closely held corporation which defendant-respondent Ramada Inns, Inc. acquired. Plaintiffs appeal from a trial court judgment absolving Ramada Inns from liability for permitting an allegedly unauthorized transfer of plaintiffs' stocks by their father. They do not appeal the trial court's finding of nonliability on the part of defendants Neill and Warner, the purchasers of the stock. We affirm.

The facts of the case have been submitted to us through the trial court's findings of fact and the legal file.

Karla Rai Kubatzky and Linda Lee Kubatzky, daughters of Theodore Kubatzky, were each issued 1,000 shares of Lee-Rai Corporation on February 8, 1961, when they were approximately 12 and 8 years of age. The certificates indicating ownership of these shares were issued in the individual names of the minor girls. Their father, Theodore Kubatzky, was then the principal shareholder[1] and president of Lee-Rai and remained so until March, 1965.

At that time Kubatzky transferred his shares of Lee-Rai, along with his daughters' shares, to defendants Neill and Warner. Sometime before the father presented the daughters' certificates to Neill and Warner for transfer, they had been altered to indicate that they were owned by "Theodore O. Kubatzky, Trustee-Karla Rai Kubatzky" and, "Theodore O. Kubatzky, Trustee-Linda Lee Kubatzky." To accomplish the trans-fer, Kubatzky endorsed his daughters' certificates in his name as "trustee for" Karla and Linda and delivered them to Neill and Warner. In the written agreement between him and Neill and Warner, Kubatzky agreed that the certificates issued in his minor daughters' names would bear their individual endorsements and that he would indemnify the purchasers if in the future the daughters voided the sale and demanded return of the stock. The father received full consideration for the sale of stock with his daughters apparently receiving nothing.

Subsequent to the sale, Lee-Rai issued new certificates in the names of Neill and Warner. Neill became a director and secretary of the corporation, and Warner became its president. In 1968 the stockholders of Lee-Rai transferred all outstanding shares of Lee-Rai to Ramada Inns in an exchange of stock. Lee-Rai subsequently merged into Ramada Inns, which was the survivor corporation.

Plaintiffs' suit against Neill and Warner was based on the premise that the girls' stock had been purchased with notice that the transfer was unauthorized and in fraud of their rights. Further, it was alleged that the transaction constituted an unlawful conversion of the stock certificates and a breach by Neill and Warner of their fiduciary duty as officers and directors of Lee-Rai. Plaintiffs also brought action against Lee-Rai, subsequently substituting Ramada Inns as the successor corporation, on the ground that the corporation was liable for the alleged misdeeds of its officers and directors. Suit was not brought against the father; his whereabouts were unknown.

The trial court held against plaintiffs and in so doing found that the Lee-Rai Corporation "stock book stubs were in such a state of disarray that they did not put anyone on notice as to the true nature of the ownership of the stock."

Plaintiffs appeal that portion of the trial court judgment finding no liability on the part of the corporation. They maintain

---

1. The stock certificates forming a part of the record showed that Theodore Kubatzky owned 57,000 of the 82,450 outstanding shares of stock of Lee-Rai Corporation.

that the finding that the stocks were issued in the plaintiffs' names alone dictates the conclusion that the corporation violated sections 403.030–.050, RSMo 1959, of the Uniform Stock Transfer Law, in effect at the time of transfer of plaintiffs' stocks, by permitting their transfer on the sole endorsement of the father. They contend further that the corporation violated section 403.280, RSMo 1959, by not requiring evidence of the father's appointment as trustee when he requested transfer of plaintiffs' certificates as their alleged trustee.[2]

The Uniform Stock Transfer Law, sections 403.010–.240, RSMo 1959, governed stock transfers at the time of transfer of plaintiffs' stocks.[3] Section 403.050 provides that the transfer of title to a certificate and the shares it represents is permissible only where the certificate itself or a separate document directing assignment of the certificate is endorsed by either the person who appears by the certificate to be the owner or by a person authorized by law to transfer the certificates for the owner, such as the owner's executor, guardian or administrator. Section 403.030 defines "the person appearing by the certificate to be the owner thereof" as "[t]he person to whom a certificate was originally issued."

Since the trial court specifically found that "the original certificates were issued in the individual names of the minor children," it follows that plaintiffs must be "the persons appearing by the certificates to be the owners." *See also Kaiser v. Moulton,* 631 S.W.2d 44 (Mo.App.1981); *Pederson v. Brantner,* 503 S.W.2d 25, 27 (Mo.App.1973); *Vandivort v. Dodds Truck Line, Inc.,* 444 S.W.2d 229, 230 n.1 (Mo.App.1969), holding

that a stock certificate is a muniment of title to shares of stock. Hence, an endorsement on an appropriate document by either plaintiffs or by a person legally authorized to sell their stock was a prerequisite to a lawful transfer of the stock. As plaintiffs' certificates were endorsed only by their father "as trustee" we must determine whether he possessed lawful authority to assign their stocks.

There are two potential sources of Kubatzky's authority to transfer plaintiffs' stocks—as their "trustee" or as their father and natural guardian. We need only consider the latter ground of his purported authority.

■ As a general rule, a minor child may acquire and own property in his or her name alone, and a parent lacks authority to sell the minor child's interest in property except as provided by law. *Nilges v. Nilges,* 610 S.W.2d 58, 61 (Mo.App.1980); *In re Scott K,* 24 Cal.3d 395, 595 P.2d 105, 111, 155 Cal.Rptr. 671, *cert. denied,* 444 U.S. 973, 100 S.Ct. 468, 62 L.Ed.2d 388 (1979). *See Gross v. Gross,* 625 S.W.2d 655, 662 (Mo.App.1981) (liquidation by mother/trustee of mutual funds in trust created for daughter, while normally impermissible, was proper where daughter had made gift of trust funds to mother).

■ Section 475.025, RSMo 1959,[4] permits a parent as a minor child's natural guardian to exercise the powers of a court-appointed guardian over the child's property, including its sale, so long as the property was derived from the parent.[5] The statute does not, therefore, confer upon the parent

---

2. Plaintiffs also maintain that the corporation violated its by-laws in transferring the stock on the father's endorsement. The by-laws are not a part of the record on appeal, and we make no determination on this aspect.

3. The Uniform Commercial Code, effective July 1, 1965, repealed the Uniform Stock Transfer Law. Section 400.8–308, RSMo 1978 specifies the endorsements essential for a lawful stock transfer. The transaction here, of course, was prior to the effective date of the Uniform Commercial Code in Missouri.

4. Now section 475.025, RSMo 1978.

5. Plaintiffs' contention that section 475.025 applies only to property derived from both parents lacks merit. Section 475.025, RSMo Supp. 1955, as construed in *Dyer v. Union Electric Co.,* 318 S.W.2d 401, 404 (Mo.App.1958), did apply only to property derived from the child's *parents.* Amended section 475.025, RSMo 1959, in effect at the time of transfer of plaintiffs' stock, applies to property of a minor child derived from one parent.

plenary authority to dispose of the child's property, regardless of its source. *Dyer v. Securities and Exchange Commission*, 266 F.2d 33, 43 (8th Cir.), *cert. denied*, 361 U.S. 835, 80 S.Ct. 86, 4 L.Ed.2d 75 (1959); *Todd v. Garrison*, 417 F.Supp. 97, 102 (E.D.Mo. 1976). *See also Wilson v. Kansas City Life Insurance Co.*, 233 Mo.App. 1006, 128 S.W.2d 319, 325 (1939). Nor does the statute grant the parent unrestricted enjoyment of the child's property. He must deal with it in a reasonable, prudent manner and must, like any court-appointed guardian, devote the property and its proceeds to the benefit of the ward. *Dalton v. Sturdivant Bank*, 230 Mo.App. 800, 76 S.W.2d 425, 427 (1934); § 475.025, RSMo 1959.

Insofar as this case is concerned, the key words of the statute authorizing plaintiffs' father to deal with their property is whether the shares of stock were "derived from him." There is no doubt that the stock belonged to plaintiffs; they have established that fact. But it is also manifest that defendants met the burden that shifted to them of establishing that the stock was derived from the father. This was done by showing that the father was the controlling shareholder of a closely held corporation and that his daughters—the plaintiffs—obtained their shares of stock directly from him.[6] There is nothing in the record to refute the fact that plaintiffs' father was the source of their stocks and that they were derived from him. Thus, section 475.025 comes into play, authorizing plaintiffs' father to transfer the stocks which are the subject of this litigation.

Of course, plaintiffs may have recourse against their father—something of no solace for them. But it remains that the corporation cannot be held responsible for the transfer complained of under the facts of this case.

Judgment affirmed.

REINHARD and SIMON, JJ., concur.

6. The plaintiffs' mother testified in her deposition that the plaintiffs' father had brought the stock certificates to their home in an envelope and delivered them to the girls.