[Civ. No. 11918.    Third Dist.    Feb. 6, 1969.]

In re DAVID REUBEN DONALDSON, a Person Coming Under the Juvenile Court Law.

JAMES D. MERCER, as Chief Probation Officer, etc., Plaintiff and Respondent, v. DAVID REUBEN DONALDSON, Defendant and Appellant.

Paul Petrozzi, under appointment by the Court of Appeal, for Defendant and Appellant.

Paul N. Halvonik as Amicus Curiae on behalf of Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Arnold O. Overoye, Deputy Attorneys General, for Plaintiff and Respondent.

REGAN, J.—The vice principal at Ponderosa High School in Placerville, upon being told by a student that she could purchase speed or methedrine pills at the school, advised her to make the purchase. The purchase of three pills was made, the pills were delivered to the vice principal, and the seller identified as defendant herein, a student of the school who was 15 years of age. Thereupon the vice principal searched defendant's book locker and found four half-cigarettes made of marijuana and a plastic bag containing marijuana. The search was without a warrant and without defendant's consent. The school administration retained the combinations to all student lockers and by means of master keys entered them from time to time to examine their contents for articles detrimental to the student body.

Defendant appeals from a judgment finding him to be a ward of the juvenile court (Welf. & Inst. Code, § 602), in that he violated section 11530 of the Health and Safety Code (possession of marijuana).

█ Defendant contends that prejudicial error was committed by the court in admitting into evidence the cigarettes and plastic bag which had been obtained by an unlawful search and seizure carried out by a school official upon appellant's locker, since the school official was in fact a governmental official within the meaning of the Fourth Amendment.

The People, in a two-pronged argument, assert that the vice principal stands *in loco parentis* and has joint control over the locker and also is a private person as to whom the Fourth Amendment has no application.

In *Stapleton* v. *Superior Court*, 70 Cal.2d 97, 100 [73 Cal. Rptr. 575, 447 P.2d 967], the court states:

"The Fourth Amendment's prohibition against unreasonable searches and seizures applies to the states, and evidence obtained in violation of that amendment is inadmissible in state courts. (*Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933].) The Fourth Amendment does not apply, however, to searches by private individuals (*Burdeau* v. *McDowell* (1921) 256 U.S. 465 [65 L.Ed. 1048, 41 S.Ct. 574, 13 A.L.R. 1159].)"

In *Stapleton, supra,* it is pointed out that because the search there was clearly part of a joint operation by police

and the private individual it was tainted with state action and consequently violated the Fourth Amendment's prohibition. We find no joint operation by police and the school official in the case before us.

In *People* v. *Superior Court*, 70 Cal.2d 123, 128-129 [74 Cal.Rptr. 294, 449 P.2d 230], the court, in deciding whether or not section 1538.5 of the Penal Code is available to effect suppression of evidence *not* obtained as the result of a search or seizure by a government agent, and concluding the section is not applicable, states: ''[T]he standard or test of reasonableness is that required by the Fourth Amendment of the United States Constitution. (See, e.g., *Cooper* v. *California* (1967) 386 U.S. 58, 61-62 [17 L.Ed.2d 730, 733-734, 87 S.Ct. 788].) Settled principles of constitutional law make the Fourth Amendment applicable to the states through the Fourteenth Amendment which prohibits a state from depriving 'any person of life, liberty, or property, without due process of law.' The conduct of a person not acting under the authority of a state is not proscribed by the Fourth or Fourteenth Amendments of the federal Constitution. There are no state standards for 'search and seizure' by a private citizen who is not acting as an agent of the state or other governmental unit. Therefore, acquisition of property by a private citizen from another person cannot be deemed reasonable or unreasonable (*People* v. *Randazzo* (1963) 220 Cal.App.2d 768, 775-776 [34 Cal.Rptr. 65], cert. den. 377 U.S. 1000 [12 L.Ed.2d 1050, 84 S.Ct. 1933]; *People* v. *Johnson* (1957) 153 Cal.App.2d 870, 873-878 [315 P.2d 468]), and a motion to suppress evidence so obtained cannot be made on the ground that its acquisition constitutes an unreasonable search and seizure under section 1538.5.

''Furthermore, it is clear from the available legislative history that section 1538.5 was intended to apply to suppression of evidence obtained by government agents.''

We find the vice principal of the high school not to be a governmental official within the meaning of the Fourth Amendment so as to bring into play its prohibition against unreasonable searches and seizures. Such school official is one of the school authorities with an obligation to maintain discipline in the interest of a proper and orderly school operation, and the primary purpose of the school official's search was not to obtain convictions, but to secure evidence of student misconduct. That evidence of crime is uncovered and prosecu-

tion results therefrom should not of itself make the search and seizure unreasonable.

The vice principal testified that after being advised of the purchase of the speed or methedrine pills he decided to search the locker for more of the pills, resulting in the finding of the marijuana; that it was the custom of the school authorities to search lockers in other cases. "For example, case of a bomb threat, in case of suspecting intoxicating liquor, also any other contraband or any stolen articles from school . . . . We do enter the lockers from time to time and when we suspect there is something that shouldn't be there.

". . . [W]e did have the right to go into the lockers as a safe protection for other students in the school."

The school officials, as a body and individually, have a responsibility for maintaining order upon the school premises so that the education, teaching and training of the students may be accomplished in an atmosphere of law and order. It was mandatory for the appellant to attend a full-time day school and for the full time for which the school was in session as provided under section 12101 of the Education Code. It is made mandatory upon the governing board of any school district that diligent care shall be given to the health and physical development of the pupils. (Ed. Code, § 11701.) A student may be suspended or expelled for behavior inimical to the welfare of other students, or behavior which adversely affects school discipline, or if he suffers from filthy or vicious habits, or has a mental disability which may cause his attendance to be inimical to the welfare of other students. (48 Ops.Cal.Atty.Gen. 4.) The Legislature, in recognizing the dangerous condition created on school premises by the possession thereon of drugs, enacted section 10603 of the Education Code, which provides that for the protection of other pupils in the public school, a pupil who has on school premises or elsewhere used, sold, or been in possession of narcotics or other hallucinogenic drugs or substances, may be suspended or expelled.

In *Ziegler* v. *Santa Cruz City High School Dist.*, 168 Cal.App.2d 277, 284 [335 P.2d 709], the court states:

"School authorities have a duty to supervise at all times the conduct of children on the school grounds." And in *Ziegler, supra,* at page 286, the court, in quoting from *Charonnat* v. *San Francisco Unified School Dist.*, 56 Cal.App.2d 840, 844 [133 P.2d 643], states: " ' ". . . the purpose of the law

requiring supervision of pupils on the playgrounds and on the school property during school hours is to regulate their conduct so as to prevent *disorderly and dangerous* practices which are liable to result in physical injury to immature scholars under their custody." . . .' " Also under the provisions of the California Administrative Code, title 5, sections 24 and 62, principals and teachers are directed to exercise careful supervision over the moral conditions in their respective schools, the use of narcotics is not to be tolerated, and students are required to comply with the regulations' and submit to the authority of the teachers.

The school stands *in loco parentis* and shares, in matters of school discipline, the parent's right to use moderate force to obtain obedience (43 A.L.R.2d 473; 79 C.J.S., Schools, § 493; *People* v. *Curtiss,* 116 Cal.App.Supp. 771, 775 [300 P. 801]), and that right extends to the search of the appellant's locker under the factual situation herein related.

The marijuana was not obtained by an unlawful search and seizure.

The judgment is affirmed.

Pierce, P. J., and Janes, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 2, 1969. Traynor, C. J., Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.