11 Cal.App.3d 1193 (1970)
90 Cal. Rptr. 361
In re THOMAS G., a Person Coming Under the Juvenile Court Law.
JAMES D. CALLAHAN, as Chief Probation Officer, etc., Plaintiff and Respondent,
v.
THOMAS G., Defendant and Appellant.
Docket No. 26932.
Court of Appeals of California, First District, Division One.
October 15, 1970.
*1195 COUNSEL
John D. Nunes, Public Defender, Douglas C. Rigg and Robert Betzenderfer, Assistant Public Defenders, for Defendant and Appellant.
Thomas C. Lynch, Attorney General, Robert R. Granucci and Gary Garfinkle, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
ELKINGTON, J.
By orders of the juvenile court Thomas G., a minor, was (1) found to have violated the provisions of Health and Safety Code section 11910, and therefore to be a person described by Welfare and Institutions Code section 602, (2) declared a ward of the court, and (3) placed under the supervision of the court's probation officer, to reside in the home of his parents. His appeal from the "judgment" will be treated as an appeal from these orders.
Cecil Whitoff was dean of students of a Contra Costa County high school. He was charged with the duty of enforcing student discipline, a substantial part of which concerned the use of dangerous drugs and narcotics by students. A classmate of Thomas told the dean that he had seen Thomas take a pill in the electric shop and that he was "possibly obviously intoxicated" and "perhaps unable to maintain himself." The dean testified he "believed that there would be good reason for [the classmate] to say this and so I desired to find out if this were true." He and the high school principal went to the electric shop where Thomas was asked to return with them to the dean's office. At the principal's request Thomas there emptied his pockets on the dean's desk. Among the articles disclosed was a "Kodak film canister." The canister was opened by the dean and found to contain amphetamine pills, a restricted dangerous drug (see Health & Saf. Code, § 11901; the offense is a felony). The police were called and the juvenile court proceedings against Thomas were commenced.
Thomas contends that the conduct of the school officials leading up to the *1196 discovery of contraband on his person was violative of Fourth Amendment requirements. Therefore, he insists, the amphetamine pills found on his person were erroneously allowed in evidence.
(1) Preliminarily we observe the now established principle that Fourth Amendment probable cause may result from information received from a so-called "citizen-informer" not shown to be involved in criminal activities, even though his credibility has not previously been tested. Under that rule when such a person, acting openly in aid of law enforcement, reports that he has observed criminal activity, corroboration of his reliability is unnecessary. (People v. Hogan, 71 Cal.2d 888, 890 [80 Cal. Rptr. 28, 457 P.2d 868]; People v. Scoma, 71 Cal.2d 332, 338, fn. 7 [78 Cal. Rptr. 491, 455 P.2d 419]; People v. Barrett, 2 Cal. App.3d 142, 147-148 [82 Cal. Rptr. 424]; People v. Sesser, 269 Cal. App.2d 707, 711 [75 Cal. Rptr. 297]; People v. Guidrey, 262 Cal. App.2d 495, 497-498 [68 Cal. Rptr. 794]; People v. Waller, 260 Cal. App.2d 131, 137 [67 Cal. Rptr. 8]; People v. Gardner, 252 Cal. App.2d 320, 324-325 [60 Cal. Rptr. 321]; People v. Barcenas, 251 Cal. App.2d 405, 408 [59 Cal. Rptr. 419]; People v. Griffin, 250 Cal. App.2d 545, 550-551 [58 Cal. Rptr. 707]; People v. Lewis, 240 Cal. App.2d 546, 549-551 [49 Cal. Rptr. 579]; People v. Wright, 216 Cal. App.2d 866, 871 [31 Cal. Rptr. 432].) Thomas' classmate, reporting that Thomas had taken a pill and was "possibly obviously intoxicated," may reasonably be compared to a citizen-informer reporting a crime to the police.
(2) Basic to our review is the frequently reiterated dictum of the Supreme Courts of this state and nation concerning Fourth Amendment reasonableness. "There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]  and on the total atmosphere of the case." (People v. Ingle, 53 Cal.2d 407, 412 [2 Cal. Rptr. 14, 348 P.2d 577]; and see state and federal authority there cited.)
Obviously, we must consider the facts and circumstances of this case in the light of the omnipresent evil of drug and narcotic abuse among the young people of this nation. It is a problem not to be ignored, but rather to be coped with in a manner that does no violence to constitutional standards.
(3) In the situation presented to Dean Whitoff three options seem to have been available to him.
First: Having probable cause to believe that a felony had been or was being committed, he was authorized by law to make a citizen's arrest (Pen. Code, § 837) of the child, or to call a peace officer for that purpose (Pen. Code, § 836). A search of the minor's person would then be expressly permitted by law. (People v. Ross, 67 Cal.2d 64, 69 [60 Cal. Rptr. 254, 429 *1197 P.2d 606].) Or choosing not to resort to that extremity, he or the police might have taken the information to a magistrate and requested a warrant permitting a search of the minor's person. (Pen. Code, § 1524.) As is often the case, the arrest made on probable cause may have turned out to be ill founded, or the warrant search unproductive. But, regardless of the result, little imagination is needed to visualize the adverse effect of such full blown criminal procedures on the student and on the school's discipline generally.
Second: Dean Whitoff may have chosen to ignore the problem and do nothing. This solution is contrary to common sense; it disregards all of the social interests involved. It was obviously unacceptable.
Third: The remaining available course was to do as was done by Dean Whitoff and the school principal. Without the intervention of law enforcement officers and with little or no disruption of school activities or discipline, they conducted an informal investigation of the reported matter. Their information may or may not have proved to be valid, but their action insured that the adverse effect on the student's well-being, on his present and future emotional reaction to the event, as well as on the several societal interests concerned, would be kept at a minimum.
We encounter no difficulty in concluding that the latter course was to be preferred as the most reasonable under the facts and circumstances and the atmosphere of the case. It remains to determine whether our conclusion is in harmony with reported decisions of the higher courts of the state and nation.
As recently as January of this year our Supreme Court, by Peters, J., reiterated that the right of privacy guaranteed by the Fourth Amendment "is not an absolute concept" but instead is to be extended or limited according to the circumstances of the case. (People v. McGrew, 1 Cal.3d 404, 412 [82 Cal. Rptr. 473, 462 P.2d 1]; see also People v. Edwards, 71 Cal.2d 1096, 1104 [80 Cal. Rptr. 633, 458 P.2d 713].) The same court had earlier recognized, and by Tobriner, J., pointed out, that in fixing Fourth Amendment standards, "Our desire to preserve legalistic symmetry cannot obscure the necessity of examining the practical merits of the underlying competing societal interests actually at stake." (In re Martinez, 1 Cal.3d 641, 649 [83 Cal. Rptr. 382, 463 P.2d 734].)
In Ginsberg v. New York, 390 U.S. 629, 638-640 [20 L.Ed.2d 195, 203-204, 88 S.Ct. 1274], the United States Supreme Court considered a claimed "invasion of [a] minor's constitutionally protected freedoms." It was "recognized that even where there is an invasion of protected freedoms `the power of the state to control the conduct of children reaches beyond the scope of its authority over adults....'" The court pointed out that "the well being of its children is of course a subject within the State's constitutional power to *1198 regulate," and that "parents and others, teachers for example, who have this primary responsibility for children's well-being are entitled to the support of laws designed to aid discharge of that responsibility." (Italics added; see also Prince v. Massachusetts, 321 U.S. 158 [88 L.Ed. 645, 64 S.Ct. 438].)
Earlier in Prince v. Massachusetts, supra, 321 U.S. 158, 168-169 [88 L.Ed. 645, 653-654], the United States Supreme Court stated: "The state's authority over children's activities is broader than over like actions of adults.... A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens, with all that implies. It may secure this against impeding restraints and dangers within a broad range of selection. Among evils most appropriate for such action are ... the possible harms arising from ... activities subject to all the diverse influences of the street."
The Courts of Appeal of this state have several times considered contentions of deprivation of school students' constitutional rights. Myers v. Arcata etc. School Dist., 269 Cal. App.2d 549, 558 [75 Cal. Rptr. 68], has stated that school authorities "may impose more stringent regulations upon the constitutional rights of minors than upon those of adults." To the same effect, Akin v. Board of Education of Riverside etc. Dist., 262 Cal. App.2d 161, 166 [68 Cal. Rptr. 557], announced that "it is manifestly clear that not every public restriction or limitation placed upon the exercise of secondary students' constitutional rights is ipso facto prohibited.... Where there is an invasion of protected freedoms `... the power of the state to control the conduct of children reaches beyond the scope of its authority over adults....' (Ginsberg v. State of New York, 390 U.S. 629, 638 [20 L.Ed.2d 195, 203, 88 S.Ct. 1274].) The imposition of reasonable restraints on the exercise of constitutional rights may be proper."
In In re Donaldson, 269 Cal. App.2d 509, 511-513 [75 Cal. Rptr. 220], a high school vice principal, upon being told by a student she could purchase "speed" or methadrine pills at the school, advised her to make such a purchase. The student thereupon purchased three such pills from Donaldson. The transaction was reported to the school official who without a warrant, or consent, searched the seller's school locker, where narcotics were found. Based on this evidence Donaldson was declared a ward of the juvenile court from which determination he appealed. The appellate court found an argument that the Fourth Amendment required suppression of the narcotic evidence to be invalid. School authorities, it was held, in enforcing school discipline, i.e., pertinent rules and statutes, have a "right to use reasonable or moderate force to obtain obedience," and "that right extends to the search of appellant's locker under the factual situation herein related." The court further stated: "We find the vice principal of the high school not to be a *1199 governmental official within the meaning of the Fourth Amendment so as to bring into play its prohibition against unreasonable searches and seizures. Such school official is one of the school authorities with an obligation to maintain discipline in the interest of a proper and orderly school operation, and the primary purpose of the school official's search was not to obtain convictions, but to secure evidence of student misconduct. That evidence of crime is uncovered and prosecution results therefrom should not of itself make the search and seizure unreasonable."
From the foregoing considerations we are impelled to conclude that the criticized conduct of Dean Whitoff and the high school principal was reasonable and without Fourth Amendment taint.
No merit is seen in the related contention that the high school officials were engaged in joint activity with a police lieutenant in conducting the search of Thomas' person for contraband. This contention is completely unsupported by evidence.
(4) The instant juvenile court proceedings antedated the announcement of In re Winship (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068], holding that proof beyond a reasonable doubt is a Fourteenth Amendment due process requirement applicable against state juvenile courts. It was stated in In re Steven C. (1970) 9 Cal. App.3d 255, at p. 262 [88 Cal. Rptr. 97], "The effect of this decision is to declare as unconstitutional the preponderance of evidence standard provided for in Welfare and Institutions Code section 701 and to overrule California cases which have held the statute constitutional." Winship is applicable to cases pending on appeal on the date of its filing. Since the "preponderance of evidence" standard was here applied by the court below, we deem it proper to reverse the appealed from decision and remand the cause to the juvenile court for reconsideration and decision in compliance with the demands of Winship. (See In re Samuel Z., 10 Cal. App.3d 565, 569 [89 Cal. Rptr. 246]; In re C.D.H., 7 Cal. App.3d 230, 234-235 [86 Cal. Rptr. 565].) In accordance with the dictates of In re Winship, supra, 397 U.S. 358, the juvenile court will make new findings on the present record and such additional evidence as either party may elect to produce. Thereafter further appropriate proceedings will be taken by that court.
The orders appealed from, described as "judgment" in the notice of appeal, are reversed.
Molinari, P.J., and Sims, J., concurred.