[Civ. No. 11095. Fourth Dist., Div. One. June 23, 1972.]

In re FRED C., a Person Coming Under the Juvenile Court Law.
KENNETH F. FARE, as Chief Probation Officer, etc., Plaintiff and Respondent, v.
FRED C., Defendant and Appellant.

**COUNSEL**

Johnson & Midlam and Kevin Midlam for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Jay D. Coulter and Elaine A. Alexander, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COUGHLIN, J.\***—The minor, Fred C., appeals from an order declaring him a ward of the juvenile court premised on a finding on January 19, 1971, he was unlawfully in possession of a restricted dangerous drug, in possession of marijuana, and in possession of dangerous drugs for the purpose of sale.

On the date of the alleged offenses the minor was 17 years of age; was a student at Crawford High School in San Diego; was required to spend a morning period in the "outer office" of the vice principal, Mr. Barritt, because he had been expelled from the class in which he had been enrolled for that period; went into the "inner office" of the vice principal at the request of the latter, who intended to interrogate and search him as part of

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

an investigation prompted by information the vice principal had received defendant had been selling dangerous drugs on campus that morning. Barritt, the vice principal, had received the information of defendant's involvement in drug sales from another vice principal, Mr. Urban, who had received the information from a third person. There is no evidence the third person was a reliable informant. Fred previously had been declared a ward of the juvenile court because of unlawful possession of dangerous drugs, but the evidence does not show either vice principal had this information at the time of their interview with him.

Both vice principals participated in the interview; noted the pockets of Fred's levis were bulging and a pouch was tied to his belt; and asked him what he had in his pockets and in the pouch. Fred removed the pouch and exhibited its contents, which was $20, but refused to reveal the contents of his pockets and resisted an attempt by the vice principals to search him. Thereupon, vice principal Barritt caused a police officer to be called to assist in making a search. A juvenile officer named Pilling responded to the call; was told by the vice principals what had taken place; was introduced to Fred by them; noted large bulges in the pockets of Fred's levis; and was asked to assist the vice principals in effecting a search. In response to their request, Pilling advised Fred he, the officer, intended to search him; asked Fred "to remove the bulge, a large bulge, from his front left pocket," in response to which Fred said, "Go ahead, search me. What you want is in the left front pocket"; and thereupon removed from Fred's pockets dangerous drugs and marijuana, packaged in the manner these articles generally are sold.

At the juvenile court hearing, Fred, through his attorney, objected to admission of the articles taken from his pockets upon the ground the search was illegal. His objection was overruled. On appeal he contends this ruling was reversible error.

Fred claims the search was illegal because Officer Pilling did not have probable cause to arrest him and the only basis for the search was as an incident to his arrest. The arrest was not made until after the contraband was found. The evidence supports the conclusion the officer did not conduct the search as an incident to an arrest, but upon request of the school authorities to assist them in their search.

The issue on appeal is whether, under the circumstances of this case, the school authorities were authorized to search the minor and solicit the assistance of a police officer in doing so; and whether the search so made violated the constitutional guarantee proscribing unreasonable searches and seizures.

■ School officials, in the discharge of their duties, have the authority to use moderate force to obtain obedience by minor students under their supervision; in the exercise thereof, for good cause, may detain and search a student; and in doing so, are not governed by the rules applicable to searches by law enforcement authorities, e.g., the police. (*In re Thomas G.,* 11 Cal.App.3d 1193, 1196-1199 [90 Cal.Rptr. 361]; *In re Donaldson,* 269 Cal.App.2d 509 [75 Cal.Rptr. 220].)

■ The duty of school authorities to protect students from the misconduct of another student engaged in selling dangerous drugs on school premises is recognized by section 10603 of the Education Code, authorizing the suspension or expulsion of a student selling narcotics or other hallucinogenic drugs or substances on school premises.

■ Barritt and Urban, as vice principals, had good cause to search Fred; had been informed he had sold drugs on the campus on the morning in question; noted his pockets were bulging; were shown the contents of the pouch tied to his belt which consisted of two $5 bills, ten $1.00 bills and some small change; and were shown the contents of the pouch voluntarily but were not shown the contents of Fred's pockets. When they attempted to search his pockets, he physically resisted their attempt.

, ■ School authorities may not search a student without provocation. Such a search is not within the scope of their duties. On the other hand, as in the case at bench, when the purpose of a search is within the scope of their duties, the justification therefor is not measured by the rules authorizing the search of an adult by the police. The cause justifying school authorities to search a student, granted the purpose of the search is the discharge of their duties, is commensurate with the cause justifying a police officer to investigate criminal conduct; and the rules measuring the sufficiency of the information furnishing cause for police investigation of criminals when applied to the sufficiency of information furnishing cause for a student search by school authorities adequately protects the right of the student in the premises. The sufficiency of the information upon which the vice principals acted should be measured accordingly.

The evidence at bench supports an inference the third party informant was a student reporting personal knowledge respecting Fred's sales of drugs on the campus. ■ The information furnished by such an informant is not subject to the reliability test required of information furnished by a police informant. (*In re Thomas G., supra,* 11 Cal.App.3d 1193, 1196.) In any event, regardless of who the third party may have been, the vice principals would have been derelict in their duty if they had not undertaken an investigation to ascertain the truth of the information

received. It was not improper for the vice principals to interview Fred as part of this investigation, and ask him what he had in his pockets. Suspicious circumstances developed by the interview were the bulging pockets, Fred's possession of a sum of money a student ordinarily does not carry on his person at school, and his refusal to permit a search of the bulging pockets after voluntarily disclosing the contents of the pouch attached to his belt. His refusal to permit a search was a circumstance indicating guilt because it could not be based on constitutional grounds in light of the fact the vice principals of his school were authorized to search him in the discharge of their duties.

Barritt testified when Fred resisted the attempted search of his pockets, "we decided that we were going to have to get some help"; he contacted the juvenile division of the police department for assistance in conducting the search; the purpose of the call was because, in his words, "I don't feel that I am being paid for that, to do that, because I am not trained adequately on how to handle people who become violent, or who are carrying weapons and so forth"; he told the officer, when the latter arrived at the school, "what the situation was," and asked him to assist in the search, "to help us find out what he [Fred] had"; and in the event the police had not responded to his call or had refused to participate, he intended, one way or another, with or without assistance, to make the search.

Officer Pilling testified, "Mr. Barritt related to me that he wished that I would search his young man for possible contraband and narcotic evidence"; he made the search because the school officials told him they wanted to search Fred; in making the search he was not conducting a police investigation but an investigation for the school officials; and he was "acting as an agent for Mr. Barritt."

Reasonableness is the controlling standard governing the determination whether a search is constitutionally prohibited. (*People v. Lanthier,* 5 Cal.3d 751, 755 [97 Cal.Rptr. 297, 488 P.2d 625]; *In re Thomas G., supra,* 11 Cal.App.3d 1193, 1196.) It was reasonable for the school authorities to obtain the services of a police officer to effect the search they were authorized to make. The search was the sole product of the initiating action taken by the school authorities; was executed in their presence; was effected without any violence and with a minimum of force; and avoided a hostile, physical defiance of authority. The student as well as the vice principals benefited by the officer's presence and participation.

We conclude the constitutional guarantee against unreasonable searches does not proscribe solicitation and use of professional assistance by school authorities in conducting an authorized search of a student for good cause.

(Gen. see *People* v. *Lanthier, supra,* 5 Cal.3d 751, 757.) The fact the professional services solicited and used were those of a police officer, under the circumstances of this case, did not render unreasonable that which otherwise was reasonable.

The order is affirmed.

Brown (Gerald), P. J., and Ault, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 16, 1972.