[Civ. No. 31333. First Dist., Div. Three. Jan. 4, 1973.]

In re CHRISTOPHER W., a Person Coming Under the Juvenile Court Law.
LAREN A. BECKLEY, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
CHRISTOPHER W., Defendant and Appellant.

## COUNSEL

P. Terry Anderlini, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, W. Eric Collins and Nancy S. Reller, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CALDECOTT, J.**—This is an appeal from an order adjudging appellant Christopher W., a ward of the court and a minor described by section 602 of the Welfare and Institutions Code.

On September 27, 1971, four students approached Oscar Groves, the assistant principal of the high school, and told him a sack of marijuana was

in locker B-51. He opened the locker with a master key and found a sack of marijuana. He ascertained that the locker was assigned to the appellant. He then went to the principal, Mr. Dew, and together they checked the locker. They then summoned the appellant and had him open the locker. He made no comment, and when his attention was directed to the sack, he acted surprised. There followed a half-hour conference during which the appellant denied any knowledge of the sack. He was sent home with the suggestion that he get legal counsel, and told to report in the morning. The appellant's mother was contacted at that time.

The next morning the appellant reported to Mr. Groves. After he again denied any knowledge, he was suspended pending a police investigation. The appellant then sought out Mr. Dew and, after asking his confidence, he confessed that he had bought the marijuana at school from a nonstudent, and that he feared for his life if he identified the source. The appellant was allowed to return to school after a day and a half.

The appellant has argued for the application of the search and seizure rules of the Fourth Amendment of the United States Constitution to the search of high school students' lockers by school officials. The appellant does not address himself at length to the differences between adults and children in application of the Fourth Amendment. ■ It is clear that the Fourth Amendment does not extend as far when a minor is involved. The United States Supreme Court has made this clear on numerous occasions. (See *In re Thomas G.,* 11 Cal.App.3d 1193 [90 Cal.Rptr. 361], citing *Ginsberg* v. *New York,* 390 U.S. 629, 638 [20 L.Ed.2d 195, 203, 88 S.Ct. 1274]; *Prince* v. *Commonwealth of Massachusetts,* 321 U.S. 158, 168 [88 L.Ed. 645, 653-654, 64 S.Ct. 438].) ■ A further limitation on the application of the Fourth Amendment in this case is the holding in prior California cases that high school officials are not governmental officials within the meaning of the Fourth Amendment. (*In re Donaldson,* 269 Cal. App.2d 509, 511 [75 Cal.Rptr. 220].) It is clear, however, that the Constitution is not wholly inapplicable to students, and that it does place some limits on the conduct of school officials.

The limitation of the Constitution is not the only factor affecting the activities of school personnel. While the Constitution imposes a limit on their power, the doctrine of *in loco parentis* expands their authority. The courts have long recognized that parents do exercise a large amount of responsibility and control over their children. Thus in *Vandenberg* v. *Superior Court,* 8 Cal.App.3d 1048 [87 Cal.Rptr. 876], the court held that a father's consent to a police search of his son's room, over his son's objection, was sufficient authorization for the search. ■ School officials are said to stand *in loco parentis,* in the place of parents, to their students, with similar

powers and responsibilities. (*In re Donaldson, supra,* 269 Cal.App.2d 509, 513.) This conclusion is compelled by an examination of the statutes relating to teacher duties, as well as by case law. The California Administrative Code charges school officials with the "moral condition" of their schools, and specifically charges them to eliminate "Gambling; immorality; profanity; and the use or possession of tobacco, intoxicating liquor, narcotics or other hallucinogenic or dangerous drugs or substances." (Cal. Admin. Code, tit. 5, § 301, p. D-33.) The Education Code authorizes the school district to "exclude children of filthy or vicious habits, . . ." (Ed. Code, § 10552.) Section 10603, subdivision (a), authorizes suspension of any student "[f]or the protection of other pupils in the public schools" who has "used, sold, or been in possession of narcotics or other hallucinogenic drugs or substances."

The doctrine of *in loco parentis* gives the school authorities the powers and responsibilities of parents, and at times this power and responsibility will apparently conflict with the rules set forth under the Fourth Amendment. This conflict has been before the courts before, and the outcome of the present action is controlled by those cases.

The three cases primarily applicable to this case are *In re Donaldson, supra,* 269 Cal.App.2d 509; *In re Thomas G., supra,* 11 Cal.App.3d 1193; and *In re Fred C.,* 26 Cal.App.3d 320 [102 Cal.Rptr. 682]. In *In re Donaldson,* a student reported that she could buy methedrine at school. On instructions from the vice principal, the student purchased some pills. Thereafter, a search of the seller's locker produced marijuana. The court cited *Stapleton* v. *Superior Court,* 70 Cal.2d 97 [73 Cal.Rptr. 575, 447 P.2d 967], for the proposition that the Fourth Amendment rules do not apply to searches by a private person and stated that school officials are not governmental officials. After discussing the school's responsibilities, the court concluded: "[t]he school stands *in loco parentis* and shares, in matters of school discipline, the parent's right to use moderate force to obtain obedience [citations], and that right extends to the search of the appellant's locker under the factual situation herein related." (*In re Donaldson, supra,* at p. 513.)

In *In re Thomas G., supra,* the dean and principal received a report that the student was seen taking pills and acting intoxicated. After taking the student out of class, the dean found amphetamine pills in his pocket. The court found the report to the dean to be the equivalent to the report of a citizen informer, and to constitute probable cause. Once probable cause was established, the school authorities had three options: to make a citizen's arrest or otherwise initiate police proceedings; to ignore the situation; or to make an informal investigation. The school authorities chose the third, and the court approved the choice. The opinion cites *Ginsberg, supra,* and

*Prince, supra,* for the proposition of lesser applicability of Fourth Amendment procedures to children.

The most recent case on point is *In re Fred C., supra,* 26 Cal.App.3d 320. The vice principal had received a report that a student had been selling dangerous drugs that morning. When asked the contents of his pouch and pockets, the student produced $20 from his pouch, but refused to reveal the contents of his pockets, and resisted the attempt by two vice principals to search him. After a juvenile officer was summoned, a search produced dangerous drugs and marijuana, packaged in the manner in which they are usually sold. The court held that school authorities have the authority to use force, including searches, in the course of their duties. The court also held that one of their duties was the protection of other students from the sale of drugs. Although the Constitution prevents searches at the whim of the officials, searches are permitted whenever they reasonably fall within the scope of the school's duties and responsibilities. The test for cause is whether or not there was enough information to start a police investigation. In other words, whether the search was reasonable.

■ We believe that the appropriate test for searches by high school officials is two-pronged. The first requirement is that the search be within the scope of the school's duties. The second requirement is that the action taken, the search, be reasonable under the facts and circumstances of the case. Although *in loco parentis* is applicable, the Fourth Amendment limits that power to acts that meet above requirements. In this case, prevention of the use of marijuana is clearly within the duties of school personnel and the action taken, the verification of the report, was reasonable. The evidence was properly admitted.

The appellant contends that use of the confession given to the high school principal violates the Constitution. His argument is based on applying rules for police conduct to high school officials. As already stated, high school personnel are not government officials for purposes of the constitutional rules regulating police conduct.

■ The appellant argues that the confession was obtained by the principal and vice principal through inducements. However, by the time the confession occurred, Christopher had already been suspended and the marijuana had been sent to the police. The inducements complained of, that it would be easier on Chris, and the police would not be involved, had already evaporated. In addition, *Mallory* v. *United States,* 354 U.S. 449 [1 L.Ed.2d 1479, 77 S.Ct. 1356], cited by the appellant, makes clear that the rule is based on fear of delay in custody between arrest and arraignment; however, in the present case Chris was not taken into custody.

■ Appellant argues that the principal should have warned him that his confession could be used against him before listening to it, however, the principal had no legal duty to issue *Miranda* warnings. *Miranda* dealt with custodial interrogations, before or after arrest. Here no public officials were involved. In addition, Chris was not in custody. He had just been suspended and desired to see the principal, over the vice principal's discouragement.

Appellant suggests that the action of the principal in accepting Chris' confession deprived him of legal counsel. The situation is one of misplaced trust. The principal honored Chris' trust as long as he legally could. It was only in court that he revealed the confession.

■ Finally, the appellant contends that the condition of probation prohibiting him from driving a motor vehicle (except under certain specified conditions) is invalid.

Section 730 of the Welfare and Institutions Code contains the statutory language authorizing courts to establish probation conditions in juvenile cases.[1] We have been unable to find any cases interpreting this language. It is, however, very similar to the language in Penal Code section 1203.1, authorizing probation conditions in criminal proceedings.[2] Therefore, the cases discussing adult probation provisions are useful in determining the scope of discretion in juvenile cases.

*In re Bushman,* 1 Cal.3d 767 [83 Cal.Rptr. 375, 463 P.2d 727], adopted the formulation of *People* v. *Dominguez,* 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290], for the boundaries of judicial discretion. "A condition of probation which (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality does not serve the statutory ends of probation and is invalid." (*Dominguez* at p. 627.) In the present case, the order making appellant a ward of the court was based on a finding of possession of marijuana. The appellant had purchased the marijuana at school, so that a car was not involved in the possession offense. Driving has no relationship to the crime charged and there was no evidence that he drove while using marijuana.

---

[1] "The court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (Welf. & Inst. Code, § 730.)

[2] "The court may impose and require . . . other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer. . . ." (Pen. Code, § 1203.1.)

Driving itself is not criminal. Although the use of a car might facilitate obtaining marijuana in the future, there is not a reasonable connection between the two, as the drug is apparently available at school. Driving is not reasonably related to future criminality. The condition that the appellant not drive does not serve the statutory ends of probation, and therefore is not reasonable within the meaning of Welfare and Institutions Code section 730. The condition is invalid.

However, though a court cannot as a punishment prohibit the juvenile from driving, this is not to say that the court, in an appropriate case, cannot find that it is necessary for the reformation and rehabilitation of the juvenile, that during the period of probation, he be prohibited from driving a motor vehicle. No such finding was present here.

The order of the juvenile court is modified by striking the prohibition against driving a motor vehicle and as so modified the order is affirmed.

Draper, P. J., concurred.