[Crim. No. 20361. May 25, 1979.]

In re SCOTT K., a Person Coming Under the Juvenile Court Law.
KENNETH F. FARE, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
SCOTT K., Defendant and Appellant.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Harold E. Shabo, Kenneth I. Clayman, Michael Allensworth and Albert J. Menaster, Deputy Public Defenders, for Defendant and Appellant.

D. Heather Werthmuller as Amicus Curiae on behalf of Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

NEWMAN, J.—A 17-year-old defendant appeals from an order declaring him a juvenile court ward and placing him on probation. (See Welf. & Inst. Code, § 602.) The order was based on the court's finding that defendant unlawfully possessed marijuana for purpose of sale in violation of section 11359 of the Health and Safety Code. The question is whether a warrantless, parent-approved, police search of defendant's personal property was permissible.

Defendant's mother found marijuana in his desk drawer. She gave it to an off-duty police officer who lived in the neighborhood and told him

that conversations with other parents led her to believe that her son might be selling marijuana. A week later that officer's report was given to Narcotics Officer Schian for a follow-up. He telephoned the father to advise that he was about to arrest defendant. The conversation was as follows: "In substance, I advised the father that I was in charge of the follow-up investigation of the marijuana that his wife had turned over to the police officer; that an arrest would result from this situation, arrest of the son; that I intended to come out and arrest his son if his son was home, and then I received the information that he was working on his motorcycle in the garage.

"And I asked him, 'Is it all right with you then that I go to the garage and arrest your boy there and do you wish to join us out there then, or what shall we do to make it easy on maybe the rest of the family?'

"And he indicated, 'Why don't you just come on inside after you have arrested him?' "

Without warrant, Schian and other officers went to the garage. Schian arrested defendant and took him to the house, where the father gave permission to search defendant's bedroom. The search disclosed a locked toolbox. The father told Schian that he had no key and that it was defendant's box. When asked about the key, defendant replied he had lost it. Schian said, "Your father already told me I could break the toolbox open if I couldn't find a key, but it's not in my interest to destroy the lock. Let me see the keys you have in your pocket." Defendant gave Schian his keys, one of which opened the box. Inside were nine baggies of marijuana.

The trial court ruled the arrest illegal for noncompliance with *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333] because no exigent circumstances existed and there was sufficient time for the officer to secure an arrest warrant. The court nonetheless denied a motion to suppress as evidence the marijuana found in the toolbox. It concluded that search of the box was independent from the arrest and was pursuant to a valid consent. The court reasoned that, because the father owned the house and had a duty to control his son's activities, he could permit the search at any time, whether or not his son was present or under arrest.[1]

---

[1] These comments of the trial judge are pertinent:

"I find that the father . . . because of the evidence elicited as relates the relationship vis-a-vis the father, the minor and the home, had the right to conduct a search through whatever means were efficacious of the entirety of his own home and anything therein

After hearing the trial court's ruling, defendant admitted possessing marijuana for sale on the date of his arrest as charged and was adjudged a juvenile court ward. He contends on appeal that denial of his motion to suppress was erroneous. If so, he is entitled to withdraw his admission. (*People* v. *Hill* (1974) 12 Cal.3d 731, 767-769 [117 Cal.Rptr. 393, 528 P.2d 1].)

The People contend that a father has authority to inspect the belongings of a minor child to promote the child's health and welfare; also, that in consenting to the search this father was "merely using the police as an instrumentality to assist him in complying with his parental duty."[2]

The formulation of issues in both the trial court's ruling and the People's argument seems misleading. Is not an important distinction obscured—the distinction between the parent-child relation and a constitutionally prescribed relation between people and government? A minor's interest in both those relations is identifiable even when, as here, his or her assertion of privacy rights against the government appears to conflict with parental authority. The primary issue in this case involves the minor's rights regarding his government.

### SEARCH AND SEIZURE

Article I, section 13 of the California Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

We are assisted when we interpret those words by United States Supreme Court opinions on the federal Constitution's Fourth Amend-

contained, whether placed there by his son or any other person; that it is not an overextension of the father's rights to use the instrumentality of the Narcotics Division of the Los Angeles Police Department to assist him in doing so.

· "[T]he possessory rights to the contents of the entirety of the home . . . are at least joint possessory rights residing equally with the father and the minor. . . ."

[2]The People appear to confuse search by a private party with a warrantless police search validated by third-party consent. The marijuana that defendant's mother found appears to have been the product of search by a private party. But the baggies found in the toolbox were the product of a search initiated and conducted by the police. Defendant's father did not search; nor did he ask the police to search. Rather he consented to a request that the police be permitted to search.

ment, which of course prescribes minimum standards that may not be violated.[3] That court apparently has not yet considered the Fourth Amendment in a juvenile context. Further, the justices seem to have been reluctant to define the "totality of the relationship" of minors and the state. (*In re Gault* (1967) 387 U.S. 1, 13 [18 L.Ed.2d 527, 538, 87 S.Ct. 1428]; *Carey* v. *Population Services International* (1977) 431 U.S. 678 [52 L.Ed.2d 675, 97 S.Ct. 2010].) ■ Minors are, however, "persons" under our Constitution possessed of rights that governments must respect.[4] *(Tinker* v. *Des Moines School Dist.* (1969) 393 U.S. 503, 511 [21 L.Ed.2d 731, 740, 89 S.Ct. 733].) Fourth Amendment protection may be inferrable from the court's recognition of minors' rights to privacy; e.g., a state may not condition a minor's decision to have an abortion on parental consent (*Planned Parenthood of Missouri* v. *Danforth* (1976) 428 U.S. 52 [49 L.Ed.2d 788, 96 S.Ct. 2831]); nor may it because of youth restrict one's access to contraceptives (*Carey* v. *Population Services International, supra,* 431 U.S. 678). Contraceptives are property, inherently personal. Since *Carey* prevents the state from restricting access to that property, it may indeed also protect the minor from arbitrary search and seizure once the property is obtained.

■ By no means are the rights of juveniles coextensive with those of adults. (See *In re Roger S.* (1977) 19 Cal.3d 921, 928 [141 Cal.Rptr. 298, 569 P.2d 1286].) Minors' rights are often legitimately curtailed when the restriction serves a state's interest in promoting the health and growth of children. (See *Prince* v. *Massachusetts* (1944) 321 U.S. 158, 168-170 [88 L.Ed. 645, 653-655, 64 S.Ct. 438]; *Ginsberg* v. *New York* (1968) 390 U.S.

---

[3]"This court has always assumed the independent vitality of our state Constitution. In the search and seizure area our decisions have often comported with federal law, yet there has never been any question that this similarity was a matter of choice and not compulsion." (*People* v. *Brisendine* (1975) 13 Cal.3d 528, 548 [119 Cal.Rptr. 315, 531 P.2d 1099].)

[4]Minors are "entitled to constitutional protection for freedom of speech, *Tinker* v. *Des Moines School District,* 393 U.S. 503 (1969) [21 L.Ed.2d 731, 89 S.Ct. 733], *West Virginia State Board of Education* v. *Barnette,* 319 U.S. 624 (1943) [87 L.Ed. 1628, 63 S.Ct. 1178]; equal protection against racial discrimination, *Brown* v. *Board of Education,* 347 U.S. 483 (1954) [98 L.Ed. 873, 74 S.Ct. 686]; due process in civil contexts, *Goss* v. *Lopez,* 419 U.S. 565 (1975) [42 L.Ed.2d 725, 95 S.Ct. 729]; and a variety of rights of defendants in criminal proceedings, including the requirement of proof beyond a reasonable doubt, *In re Winship,* 397 U.S. 358 (1970) [25 L.Ed.2d 368, 90 S.Ct. 1068], the prohibition of double jeopardy, *Breed* v. *Jones,* 421 U.S. 519 (1975) [44 L.Ed.2d 346, 95 S.Ct. 1779], the rights to notice, counsel, confrontation and cross-examination, and not to incriminate oneself, *In re Gault,* 387 U.S. 1 (1967) [18 L.Ed.2d 527, 87 S.Ct. 1428], and the protection against coerced confessions, *Gallegos* v. *Colorado,* 370 U.S. 49 (1962) [8 L.Ed.2d 325, 82 S.Ct. 1209]; *Haley* v. *Ohio,* 332 U.S. 596, (1948) [92 L.Ed. 224, 68 S.Ct. 302]." (*Carey* v. *Population Services International, supra,* 431 U.S. 678, 692, fn. 14 [52 L.Ed.2d 675, 689, 97 S.Ct. 2010, 2020].)

629, 638 [20 L.Ed.2d 195, 203, 88 S.Ct. 1274].) ■ In juvenile court proceedings rights may not be asserted if they might disrupt unique features of the proceedings; for example, jury trial is not required. (*People* v. *Superior Court (Carl W.)* (1975) 15 Cal.3d 271, 274 [124 Cal.Rptr. 47, 539 P.2d 807].) Search and seizure laws, however, hardly seem disruptive or otherwise inconsistent with the state's interest in child welfare. It is established that minors have a liberty interest that entitles them to due process whenever a state initiates action to deprive them of liberty. (*In re Gault, supra,* 387 U.S. 1; *Goss* v. *Lopez* (1975) 419 U.S. 565, 574 [42 L.Ed.2d 725, 734, 95 S.Ct. 729]; *In re Winship* (1970) 397 U.S. 358, 367 [25 L.Ed.2d 368, 377, 90 S.Ct. 1068]; *In re Roger S., supra,* 19 Cal.3d 921; *In re Arthur N.* (1976) 16 Cal.3d 226 [127 Cal.Rptr. 641, 545 P.2d 1345].) Enforcement of search and seizure protection helps ensure that the factfinding process conforms with standards of due process.

Justice should not be compromised by well-intentioned aims to correct transgressing youths, and the rehabilitative value of treating juveniles with fairness must not be underrated. (*In re Gault, supra,* 387 U.S. 1, 18, 26, 51-52; *In re Roger S., supra,* 19 Cal.3d 921, 930.) Among sister states the extension of Fourth Amendment protections to minors is widespread.[5] ■ California Courts of Appeal have correctly, we believe, assumed that juveniles do enjoy the rights pronounced in *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], and thus have focused their inquires on whether the search in question was reasonable.[6] Only recently we endorsed that assumption sub silentio. (*In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957].)

The minor here contends that, because the toolbox was his own property, warrantless police search violated both his right to privacy and his right to be free from unreasonable search and seizure. He was age 17,

[5]See for example judicial extension of those protections to juveniles in *State* v. *Lowry* (1967) 95 N.J. Super. 307, 313-317 [230 A.2d 907, 910-912]; *In re Williams* (1966) 49 Misc.2d 154, 169-170 [267 N.Y.S.2d 91, 109-110]; *In re Morris* (1971) 29 Ohio Misc. 71 [278 N.E.2d 701, 702]; *In re Harvey* (1972) 222 Pa. Super. 222, 229 [295 A.2d 93, 96-97]; *Ciulla* v. *State* (Tex.Civ.App. 1968) 434 S.W.2d 948, 950.

A number of states have statutes that give juveniles the same fourth amendment protection as adults. See Uniform Juvenile Court Act, section 27, subdivision (b) (1968) and state statutes cited in Levitt, *Preadjudicatory Confessions And Consent Searches: Placing The Juvenile On The Same Constitutional Footing As An Adult* (1977) 57 B.U.L.Rev. 778, 781, footnote 24.

[6]*In re Joseph A.* (1973) 30 Cal.App.3d 880, 883-884 [106 Cal.Rptr. 729]; *In re Robert H.* (1978) 78 Cal.App.3d 894 [144 Cal.Rptr. 565]; *In re Christopher W.* (1973) 29 Cal.App.3d 777 [105 Cal.Rptr. 775]; *In re Fred C.* (1972) 26 Cal.App.3d 320 [102 Cal.Rptr. 682]; *In re Donaldson* (1969) 269 Cal.App.2d 509 [75 Cal.Rptr. 220].

old enough to assert his rights. When the police asked him for the key he did not consent to the search; instead the father gave consent.

Though the record discloses some discord in the parent-child relation, no evidence suggests that the discord concerned control of the box. The facts rather support the son's claim that the box was his own.[7] His constitutional rights were at stake; and we need only consult the words of article I, section 13 of the California Constitution to see that its protection applies.[8]

### PARENTAL CONTROL AND MINORS' RIGHTS

The People argue that, because a parent is responsible for minor children and may himself inspect their property, police search of that property when pursuant to parental consent is reasonable and accordingly constitutional. Implicit is the notion that the father here could effectively waive his son's right to be secure in the son's effects. We reject that view.

In *Planned Parenthood of Missouri* v. *Danforth* (1976) 428 U.S. 52 [49 L.Ed.2d 788, 96 S.Ct. 2831] the United States Supreme Court rejected the argument that parental authority should prevail over a minor's decision to terminate pregnancy. "Any independent interest the parent may have in the termination of the minor daughter's pregnancy is no more weighty than the right of privacy of the competent minor mature enough to become pregnant." (*Id.,* at p. 75 [49 L.Ed.2d at p. 808].)

This court has insisted that a minor's due process right be protected even when the right imposes a burden on parents or limits parental control. (*In re Ricky H.* (1970) 2 Cal.3d 513 [86 Cal.Rptr. 76, 468 P.2d 204]; *In re Roger S., supra,* 19 Cal.3d 921.) In *Ricky H.* the trial court's decision accepting a minor's waiver of the right to counsel was reversed because the waiver was influenced by the fact that the nonindigent

[7]The father told the police that the box belonged to his son. It was locked and the son had the key. The father later testified that the son obtained the box from a father-in-law and, though he (the father) had borrowed tools, he had never opened the box himself but always obtained the tools directly from the son.

[8]Though the trial court discussed the minor's expectation of privacy we need not do so. Most often the expectation-of-privacy test has been applied in circumstances where the words of the Constitution are not clearly applicable. (See, e.g., *Burrows* v. *Superior Court* (1974) 13 Cal.3d 238 [118 Cal.Rptr. 166, 529 P.2d 590] (seizure of individual's bank records).) Search and seizure laws protect privacy, but the "protections go further, and often have nothing to do with privacy at all." (*Katz* v. *United States* (1967) 389 U.S. 347, 350 [19 L.Ed.2d 576, 581, 88 S.Ct. 507].)

parents were obliged by statute to pay counsel fees. *Roger S.* held that, regarding admission to a mental hospital, a minor of 14 years or more possesses due process rights that may not be waived by the parent or guardian. It would be incongruous to conclude that parents, for good reason or no reason, may summarily waive their child's right to search and seizure protections.

### THIRD PARTY CONSENT TO SEARCH

Our final question is whether the toolbox search was reasonable because the father's consent qualified under the third-party-consent exception to warrant requirements. ■ A warrantless search is reasonable when consent is granted by one who has a protectible interest in the property. Valid consent may come from the sole owner of property or from "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." (*United States* v. *Matlock* (1974) 415 U.S. 164, 171 [39 L.Ed.2d 242, 250, 94 S.Ct. 988].[9]

California case law prior to *Matlock* is consistent with that "common authority" principle. Third-party-consent searches were held invalid in *People* v. *Cruz* (1964) 61 Cal.2d 861, 866-867 [40 Cal.Rptr. 841, 395 P.2d 889] (apartment guests could not consent to search of property of others jointly residing there); *People* v. *Murillo* (1966) 241 Cal.App.2d 173, 176-180 [50 Cal.Rptr. 290] (roommate's consent to search residence was not a valid consent to search attaché case); *People* v. *Egan* (1967) 250 Cal.App.2d 433 [58 Cal.Rptr. 627] (stepfather's consent invalid for search of adult stepson's personal effects though they were located in bedroom of stepfather's home); *People* v. *Daniels* (1971) 16 Cal.App.3d 36 [93 Cal.Rptr. 628] (mother could not consent to search of adult son's suitcase in her home).

■ The trial court here held that the father's authority was based on the combined circumstance of his ownership of the home and his duty to control his son. Yet neither fact shows the requisite link between the father's interest and the property inspected. Common authority over

---

[9]As explained by the court, "[c]ommon authority is . . . not to be implied from the mere property interest a third party has in the property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (415 U.S. at p. 171, fn. 7 [39 L.Ed.2d at p. 250].)

personal property may not be implied from the father's proprietary interest in the premises. (*United States* v. *Matlock, supra,* 415 U.S. 164, 171, fn. 7 [39 L.Ed.2d 242, 250].) Neither may it be premised on the nature of the parent-child relation.[10]

██ Juveniles are entitled "to acquire and hold property, real and personal" (*Estate of Yano* (1922) 188 Cal. 645, 649 [206 P. 995]); and "a minor child's property is his own . . . not that of his parents." (*Emery* v. *Emery* (1955) 45 Cal.2d 421, 432 [289 P.2d 218]; see also Civ. Code, § 202.) ██ Parents may have a protectible interest in property belonging to children, but that fact may not be assumed. When a warrantless search is challenged the People must show that it was reasonable. Here the People did not establish that the consenting parent had a sufficient interest under search and seizure law. The father claimed no interest in the box or its contents. He acknowledged that the son was owner, and the son did not consent to the search. Because those facts were known to the police there was no justification either for their relying on the father's consent to conduct the search or for their failure to seek the warrant required by law.

The trial court's order is reversed.

Bird, C. J., Tobriner, J., Mosk, J., and Manuel, J., concurred.

**CLARK, J.,** Dissenting.—Scott's right under the California Constitution to be free from unreasonable searches and seizures was not violated when his father and mother enlisted police assistance in discharging their parental responsibilities and consented to the search of Scott's toolbox. But his parents' right to care for, discipline and control their minor children—a liberty interest protected by the due process clause of the Fourteenth Amendment to the United States Constitution—is violated by the decision reached by this court's majority today.

---

[10]Courts have not previously embraced the notion that the government can use the relationship between parties to impute "common authority" to the consenting party when none in fact existed. (Cf. *People* v. *Daniels* (1971) 16 Cal.App.3d 36 [93 Cal.Rptr. 628]; *People* v. *Murillo* (1966) 241 Cal.App.2d 173 [50 Cal.Rptr. 290]; also see dictum in *People* v. *Terry* (1970) 2 Cal.3d 362, 392 [85 Cal.Rptr. 409, 466 P.2d 961], where this court held the wife could give valid consent to police search of her husband's property because "[t]here is no evidence that the murder weapon was in a sealed box or other container belonging to Terry (the husband), which Mrs. Terry might not have had authority to permit to be searched."

Admittedly, minors as well as adults possess constitutional rights. (*Planned Parenthood of Missouri* v. *Danforth* (1976) 428 U.S. 52, 74 [49 L.Ed.2d 788, 807, 96 S.Ct. 2831].) However, as the majority concede, the rights of minors are by no means coextensive with those of adults. (*Ante,* p. 401.) In particular, the right to be free from unreasonable searches and seizures does not extend as far when a minor is involved. (*In re Christopher W.* (1973) 29 Cal.App.3d 777, 780 [105 Cal.Rptr. 775].)

"[E]ven where there is an invasion of protected freedoms 'the power of the state to control the conduct of children reaches beyond the scope of its authority over adults.' " (*Ginsberg* v. *New York* (1968) 390 U.S. 629, 638 [20 L.Ed.2d 195, 203, 88 S.Ct. 1274]; *Prince* v. *Massachusetts* (1944) 321 U.S. 158, 170 [88 L.Ed.2d 645, 655, 64 S.Ct. 438].) Moreover, parents have powers greater than those of the state to curtail a child's exercise of the constitutional rights he may otherwise enjoy, for a parent's own constitutionally protected liberty includes the right to "bring up children" (*Meyer* v. *Nebraska* (1923) 262 U.S. 390, 399 [67 L.Ed. 1042, 1045, 43 S.Ct. 625, 29 A.L.R. 1446]), and to "direct the upbringing and education of children" (*Pierce* v. *Society of Sisters* (1925) 268 U.S. 510, 534-535 [69 L.Ed. 1070, 1078, 45 S.Ct. 571, 39 A.L.R. 468]). (*In re Roger S.* (1977) 19 Cal.3d 921, 928 [141 Cal.Rptr. 298, 569 P.2d 1286].) As against the state, this parental duty and right is subject to limitation only "if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens." (*Wisconsin* v. *Yoder* (1972) 406 U.S. 205, 234 [32 L.Ed.2d 15, 35, 92 S.Ct. 1526].)

By bringing Scott's possession and possible sale of marijuana to the attention of the authorities, and by cooperating with them in the investigation of these offenses, Scott's parents certainly did not jeopardize his health or safety, nor did their actions "have a potential for significant social burdens." Quite the contrary. However, the majority's decision very likely will have such deleterious effects by diminishing the authority of parents to discipline and control their children.

The issue presented by this case was correctly analyzed in the majority opinion prepared for the Court of Appeal by Justice Kingsley. "There is a strong public policy protecting the interest of a parent in the care, discipline and control of a minor child. A parent who, as in this case, has reasonable grounds to believe that a minor child is engaged in serious criminal activity, must be allowed to investigate that belief, in order to determine the proper discipline and corrective action to be taken. If that investigation involves the search, with or without the minor's consent, of

locked items, the search is justified as conduct in aid of the parental power of care and discipline. It follows that, if the father in this case had himself opened the toolbox, or if the father, exerting his parental authority, had secured the key from the minor and then opened the box, the search would have been lawful. That conclusion is supported by the cases involving searches of locked containers by school authorities. (*In re Christopher W.* (1973) 29 Cal.App.3d 777 [105 Cal.Rptr. 775]; *In re Fred C.* (1972) 26 Cal.App.3d 320 [102 Cal.Rptr. 682]; *In re Donaldson* (1969) 269 Cal.App.2d 509 [75 Cal.Rptr. 220].) If the *loco parentis* status of a school official permits a search of a locked container in order to protect against and prevent violations of the criminal laws, a fortiori, a parent has an equal right.

"The minor argues, however, that if the father, instead of securing the key himself and using it himself, involves a police officer in the process, the search thereby becomes tainted. We reject that theory. The material fact is not who actually secured the key and used it, but under whose authority the key was obtained and used. The record before us makes it clear that the authority here was that of the father. The police made it clear that they would not search the box unless the father consented; they acted only on that consent. What the father could do himself, he could do by an agent, whether that agent be a locksmith or a policeman." (See also *In re Fred C.* (1972) 26 Cal.App.3d 320 [102 Cal.Rptr. 682] (when high school student physically resisted a reasonable search of his pockets by vice principals, the school authorities were justified in having the search conducted by a police officer).)

The reasoning of the Court of Appeal is supported by *Vandenberg* v. *Superior Court* (1970) 8 Cal.App.3d 1048 [87 Cal.Rptr. 876], a decision the majority of this court fail to mention. The petitioner in *Vandenberg,* like Scott, was a minor "living with his father, in the father's home, and subject to the ordinary rules regulating the relationship of parent and minor child." (8 Cal.App.3d at p. 1054.) A deputy sheriff went to the Vandenberg residence, advised the father he was conducting a narcotics investigation, and received the father's permission to enter the home. After demonstrating to the father that his son had puncture wounds on his arms possibly indicative of narcotics usage, the deputy asked for the father's permission to search the house for narcotics. The father consented, despite his son's objection. In searching the bedroom jointly occupied by the father and son, the deputy found a paper containing a substance resembling heroin hidden among some towels.

The Court of Appeal held: "[A] father may grant permission to enter and search a bedroom jointly occupied by the father and his son and such consent is valid although the son may protest the search." (8 Cal.App.3d at p. 1055.) Explaining its decision, the court stated: "In his capacity as the head of the household, a father has the responsibility and authority for the discipline, training and control of his children. In the exercise of his parental authority a father has full access to the room set aside for his son for purposes of fulfilling his right and duty to control his son's social behavior and to obtain obedience. [Citation.] Permitting an officer to search a bedroom in order to determine if his son is using or trafficking in narcotics appears to us to be a reasonable and necessary extension of a father's authority and control over his children's moral training, health and personal hygiene." (*Id.*)

The judgment should be affirmed.

**RICHARDSON, J.**—I concur in part and respectfully dissent in part. On the one hand, parents, in my view, have both the right and the responsibility to preserve the lawful nature of activities in their home. Both generally, as law-abiding citizens, and particularly, as model-setting parents, their obligation, assuredly, is to control and eliminate any criminal activity in the home. Children in a home setting are more than tenants at will of the rooms which they occupy, and a parent is more than a landlord. On the other hand, a minor child no less than an adult retains substantial Fourth Amendment rights, but I do not view these as absolute or unconditional in a home environment.

How may we reconcile the seemingly conflicting interests and obligations? The Fourth Amendment proscription against *"unreasonable"* searches and seizures provides the key. I would hold that a minor child living in a home situation is not powerless before an unrestricted exploratory police search even though undertaken with parental consent. However, both the child's Fourth Amendment and privacy rights are not unrestricted. Bearing in mind the dual relationships involved herein, namely, the minor-citizen versus the officer-state invoking Fourth Amendment rights, and the private parent-child familial relationship, I would adopt the following principles. A parent may validly consent, over the objection of his dependent minor child living in the family home, to a police search of the premises and possessions used or owned by the child on the premises, if reasonable grounds (not necessarily amounting to probable cause) support a belief that the place or thing searched will

yield criminal evidence. In this situation I would not elevate a child's Fourth Amendment or privacy rights above a parent's right to maintain a lawful, stable home environment free from criminal activity. The minor has no "reasonable expectation of privacy" in these limited circumstances where the police act reasonably in good faith reliance on the parents' consent.

The evidence here clearly supports the instant search. Scott's parents had already discovered marijuana in his room. Their own discussions with other parents established the substantial possibility that Scott was trafficking in the substance. On that basis, they initiated contact with the police. After further independent investigation, the authorities became convinced there was probable cause for Scott's arrest. Detective Schian, one of the arresting officers, testified he told the parents that a search of Scott's bedroom was the best way to prove or disprove Scott's involvement. This was reasonable. The parents had a legitimate purpose in seeking to ferret out the existence of any criminal activity conducted in any part of their home. Their responsibility to themselves, and as parents of Scott and of any other children in the family required that they do so. Parents in certain situations have a right to be suspicious, and to act reasonably in accordance with those suspicions. They do not help their children if they do otherwise. A locked container controlled solely by the suspect minor and found in his room would, of course, be one of the most logical places for concealment of contraband or criminal evidence.

Under the foregoing conditions, I would not recognize a child's right of "sanctuary" vis-à-vis the responsible parent. I therefore conclude that the search was proper, and that the judgment should be affirmed.